JAMES W. BURKE et al., Plaintiffs-Appellants, v. ZIPCO OIL COMPANY et al., Defendants-Appellees.

(No. 58444; ▮▮▮▮▮▮▮▮▮

First District (4th Division)—April 24, 1974.

Addis E. Hull and Rodney D. Joslin, both of Chicago (Jenner & Block, of counsel), for appellants.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Herbert C. Loth, Jr., of counsel), for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an action pursuant to section 13 of the Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, par. 137.13) to rescind the sales of working interests in four oil and gas wells. The wells, which are located in Illinois, are known as "Eldorado West #1", "Burton #1", "Shick Well # 1" and "McDonald Well # 1". Plaintiffs James Burke and Patricia Krueger purchased interests in all four wells. Nathaniel Reed purchased interests in Eldorado West and Burton #1, and Diane and Daniel Gallagher purchased an interest in Eldorado West. In their complaint the plaintiffs alleged that the working interests in these wells were securities and that the defendants sold them in violation of the act by failing to register them with the Secretary of State as required by section 5 (Ill. Rev. Stat. 1973, ch. 121½, par. 137.5). They sought to avoid the sales and recover the purchase prices, plus interest and attorney's fees.

In their answer the defendants conceded that the interests were securities and that they were not registered with the Secretary of State, but denied that this required them to void the sales. In their answer to interrogatories they claimed that the interests were sold in a transaction exempt from registration under the provisions of section 4H (Ill. Rev. Stat. 1973, ch. 121½, par. 137.4H), which provides essentially that sales of fractional undivided interests in oil and gas leases are exempt if they are made to 25 persons or less within any consecutive 12-month period, or if the aggregate selling price does not exceed $25,000 within any such period, and certain other requirements are met. These include the filing of a report of the sale with the Secretary of State within 30 days.

The parties filed cross motions for summary judgment based upon the pleadings and the defendants' answers to interrogatories. With respect to the interests in the Eldorado West well, the court found that the defendants had not registered the sales with the Secretary of State and had not qualified them as exempt under the provisions of section 4H because they had not filed a report of the sale within 30 days. The court entered judgment against the defendants for the purchase price paid by each plaintiff, plus interest at five percent, and attorney's fees of $1000. The defendants did not appeal this ruling.

With respect to the Burton, Shick and McDonald wells, the court found that the sales were exempt from registration under section 4H and entered judgment in favor of the defendants. The plaintiffs instituted the present appeal from the judgments concerning the Shick and McDonald wells on the theory that the reports of sale filed by the defendants incorrectly stated the prices of the interests sold. They do not dispute that the defendants otherwise complied with the requirements of section 4H and do not appeal from the judgment concerning the Burton well.

The record reveals that the interests in the wells which are the subject of this appeal were conveyed by written agreements, all of which are identical. Each recites that the seller, who is the defendant Zipco Oil Company, has received a certain sum of money from the buyer, who is one of the plaintiffs, for an undivided fractional working interest in the leases named. Ten dollars is designated as the cost of the leasehold, and the remainder of the purchase price is designated as the cost of drilling a well to a specified depth and performing certain tests for the presence of gas and oil. The drilling of the well is the obligation of the seller. The agreements further provide that if a producing well is drilled, the buyer will pay a fixed sum as "completion costs" and a pro-rata share of the monthly expenses of operation.

The agreements covering the Shick well recite that Zipco received

$6000 apiece from James Burke and Patricia Krueger in return for respective undivided one-eighth working interests. In their answers to interrogatories the defendants stated that James Burke and Patricia Krueger each paid a total of $12,000, plus operating expenses, for their interests in the well. This sum was paid in two installments of $6000. The first installment represented the price of the leasehold and initial drilling expense. The second represented completion costs, as a producing well was drilled. On their report of the sale filed with the Secretary of State the defendants listed the price of each interest as $6000.

The agreements covering the McDonald well recite the receipt of $4800 each from James Burke and Patricia Krueger. It appears from the defendants' answers to interrogatories that each actually paid a total of $10,800. This was paid in one lump sum. On their report to the Secretary of State the defendants listed the price of each of these interests as $4800.

The report of sale to the Secretary of State is required to set forth "the name and address of the issuer and of the controlling person, if the sale was for the direct or indirect benefit of such person, the total amount of the securities sold under this subsection H, the price at which the securities were sold, the commissions or discounts paid or given, the names and addresses of the purchasers, and a representation that offers to sell such securities were not made to persons in excess of the number permitted by this subsection." (Ill. Rev. Stat. 1973, ch. 121½, par. 137.4H.) It is the position of the plaintiffs that the reports filed by the defendants failed to comply with these provisions because the selling prices stated were substantially less than the sums that they actually paid for their interests. They argue that the "entire transaction" with the defendants constitutes the security and that by misstating the price the defendants failed to qualify for the exemption established by section 4H. The defendants contend that the price of a working interest in an oil or gas well does not include completion or operation expenses, and therefore that they satisfied the requirements of the act. They contend further that the definition of "selling price" sought by the plaintiffs would be unworkable in the oil and gas industry. The question to be decided by this court, then, is what constitutes the price of a working interest in an oil or gas well for the purpose of filing the report required by section 4H.

Our research discloses that no court of review in Illinois has considered this precise question. However, the Illinois Secretary of State, acting pursuant to the authority granted by section 11 of the Securities Law (Ill. Rev. Stat. 1973, ch. 121½, par. 137.11) has promulgated rules and regulations which define more fully some of the terms set forth in the statute. These define the term "working interests" as "fractional

undivided interests in an oil or gas leasehold which are subject to any portion of the expense of development, operation or maintenance." (Ill. Sec. of State R.131(a)(3) (1962), 1 CCH Blue Sky L. Rep. §16,615.) Several decisions of our courts which have considered the nature of a working interest for other purposes have indicated that it is an undivided interest in all of the oil and gas produced upon a particular parcel of land. (See, *e.g.*, *Fry v. Farm Bureau Oil Co.* (1954), 3 Ill.2d 94, 119 N.E.2d 749; *Williams v. Sohio Petroleum Co.* (1958), 18 Ill.App.2d 194, 151 N.E.2d 645.) Thus, the emphasis appears to focus upon the interest acquired in the leasehold itself rather than any contemporaneously acquired obligations to bear a portion of the expense of developing it.

Such an interpretation is also implicit in the case of *Hammer v. Sanders* (1956), 8 Ill.2d 414, 134 N.E.2d 509, which has been cited to us by the defendants. There the court considered whether a number of agreements which conveyed working interests in a group of oil leases in return for the assumption of a portion of the drilling costs constituted a security within the meaning of the Securities Law of 1919. (Ill. Rev. Stat. 1953, ch. 121½, par. 96 *et seq.*) The subject agreements were similar to the ones in the present case except that the entire consideration was listed as drilling expense. The court noted that each agreement appeared to have two purposes: "(1) to assign or evidence the sale of or promise to assign, an undivided  *  *  *  'working interest' in the leases  *  *  *; (2) to evidence an agreement whereby [the defendant] is to drill a test well and [the plaintiff] is to pay [a specified sum] as his share of the cost, with a further provision for the payment of his 'proportionate part' in equipping and operating a producing well  *  *  *." (8 Ill.2d at 419, 134 N.E.2d at 512.) Continuing, the court stated that "[o]n its face, then, the instrument involves the sale of an undivided  *  *  *  interest in the leases, coupled with or forming a part of a development contract to procure a test of the land for oil and gas." 8 Ill.2d at 420, 134 N.E.2d at 512.

■■ From the foregoing it is apparent that the court considered the undivided interest in the leases to be quite distinct from the undertaking to bear a portion of the expense of drilling, completion and operation. This was true even though, as in the present case, the interests were conveyed, and the obligation to bear the drilling expense incurred, in the same instrument. We hold, therefore, that for the purpose of section 4H, the price of a working interest in an oil or gas well does not include costs of development. Hence the defendants in the present case were not required to state the completion and operating costs in their report to the Secretary of State, and the trial court was correct in concluding that the sales to the plaintiffs were exempt.

We note in passing that our holding would indicate that drilling

costs should not be included in the price of a working interest. The defendants in the present case included the drilling cost in their report of the sale, and it appears that this is the practice of the industry where the participation agreement does not state the cost of the leasehold interest separately or where the agreement indicates that the working interest will not be sold unless the investor agrees to undertake a portion of the expense of drilling a test well. Inasmuch as neither party has questioned this practice, we need not reach any decision concerning it.

■■ Our holding will not subvert the purpose of the Securities Law, which is to protect innocent investors from dishonesty and irresponsibility on the part of persons engaging in the sale of securities (*Foreman v. Holsman* (1957), 10 Ill.2d 551, 141 N.E.2d 31) because the circumstances surrounding the filing of the report required by section 4H are such that no prospective investor could be said to rely upon the information contained therein. The report is not required to be filed until 30 days after the sale, and the information that it contains is confidential except in certain situations involving court proceedings. (Ill. Rev. Stat. 1973, ch. 121½, par. 137.4H.) To require the inclusion of development expenses as part of the price of the working interest would, therefore, serve no useful purpose. It would, in many instances, require the sellers of such interests to do the impossible, since it appears that these interests are commonly sold prior to the time that any drilling is actually commenced, and that hence the drilling, completion and operating expense is unascertainable within the time that the 4H report is required to be filed.

Finally, we note that the plaintiffs in the present case did not seek to avoid the sales until October 2, 1970, almost 2 years after the agreements were entered into. From the income figures set forth in the complaint it may be assumed that within this time the wells were drilled and found to be less profitable than anticipated. We also note that the plaintiffs do not allege that the defendants were guilty of any fraud or misrepresentation, but merely that they violated the Securities Law. We believe that the Securities Law serves a useful purpose and should be construed liberally in this light; however, it is intended to function as a shield for the innocent and not a sword for the investor who, because of the speculative nature of the venture or his own poor business judgment, fails to reap the expected return on his investment.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DIERINGER and JOHNSON, JJ., concur.