NORBERT A. DALEIDEN *et al.*, Plaintiffs-Appellants, v. WIGGINS OIL COMPANY *et al.*, Defendants-Appellees.

First District (1st Division) No. 84—1776

Opinion filed December 30, 1985.

Pierce, Lydon, Griffin & Montana, of Chicago (James S. Montana, Jr., and John A. Dienner III, of counsel), for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Norman J. Barry, Jr., and Richard B. Foster, of counsel), for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiffs, Norbert Daleiden, Arthur Tremaine, and David Thompson, sought rescission of their purchase of "securities" of defendant corporation, Wiggins Oil Company, alleging that the securities were not registered as required under the Illinois Securities Law. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.1 *et seq.*) The trial court held that rescission was proper and awarded plaintiffs $6,250. Plaintiffs appeal, contending that they are entitled to $125,466.

Plaintiffs are tax attorneys practicing law in Illinois. In 1981 they formed an investment partnership. In August of 1981, plaintiff Tremaine contacted a friend in Texas, James Musselman, seeking an investment opportunity in oil and gas exploration. Musselman introduced plaintiffs to Mark Wiggins, 75% owner of defendant corporation. The record does not indicate that Musselman was an investor in Wiggins, nor that he was paid a commission for introducing plaintiffs to Wiggins. Plaintiffs agreed to invest in Wiggins Oil, and were sent a letter of agreement dated August 31, 1981. Included with the letter were invoices indicating that plaintiffs were required to pay $125,466, of which $6,250 represented plaintiffs' share of the leasehold interest in the property if the oil wells were erected, and the balance, $119,216, represented the cost of drilling. Plaintiffs deducted the drilling costs in their partnership tax return but did not deduct the leasehold payment. The transaction was not registered with the Illinois Secretary of State.

Musselman testified that he informed plaintiffs when they initially indicated interest in investing in Wiggins Oil that the investment would not be formally registered. Plaintiffs' testimony indicated that they were unaware that the securities were not registered in Illinois until early 1983, when their attorney investigated possible legal action against Wiggins.

After trial, the trial court found that there was no evidence of fraud or misrepresentation on the part of defendants. The court held that plaintiffs' statutory right of rescission extended only to the leasehold interest and not to the cost of drilling.

The Illinois Securities Law provides that all securities that are not specifically exempted must be registered with the Secretary of State before they may be sold in Illinois. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.5.) Relevant to the issues presented here, security is statutorily defined as "fractional undivided interest in oil, gas or other mineral lease, right, or royalty, ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—1.) The sale of securities not properly registered is voidable at the election of the purchaser. (Ill. Rev. Stat. 1981, ch. 121½, par.

137.13B.) Upon rescission of a sale of unregistered securities, the purchaser is entitled to the full amount paid for the securities. Ill. Rev. Stat. 1981, ch. 121½, par. 137.13.

In an analogous situation to the case at bar, the Illinois Supreme Court in *Hammer v. Sanders* (1956), 8 Ill. 2d 414, 134 N.E.2d 509, held that the term "securities" in the statute referred to the leasehold interest and not the *pro rata* share of drilling costs. The court reasoned:

> "The statute contemplates the return of money expended in purchasing the 'security,' and it is the plaintiffs' burden to demonstrate a right to recover. In this regard, a basic distinction must be recognized here; namely, the difference between sums spent to *acquire the interest* and sums advanced to *exploit the property* (i.e. test for oil and gas)." (Emphasis added.) 8 Ill. 2d 414, 423, 134 N.E.2d 509.

Furthermore, the *Hammer* court explained:

> "The instruments on their face call for two payments, one for an undivided working interest (second paragraph) and the other for drilling costs (third paragraph). The statute allows a recovery for sums spent in purchasing the interests, but when it is shown that no such sums were in fact spent, the plaintiffs' case fails. While the statute has a wide scope and a worthy purpose, it should not be applied so as to permit the plaintiffs to recover money they expended as their share of drilling costs. Apart from the statute, there could not, in justice, be a recovery without proof of fraud, duress, or similar conduct justifying rescission." *Hammer v. Sanders* (1956), 8 Ill. 2d 414, 424, 134 N.E.2d 509.

■ We conclude that *Hammer* is factually apposite and therefore controlling in the case at bar. In our case, as in *Hammer*, the agreement between the parties provides for two distinct payments for plaintiffs' leasehold interest and their portion of the drilling costs. This distinction was recognized by the plaintiffs, who used the distinction to accrue tax benefits on their partnership tax returns. As noted by the *Hammer* court:

> "Significantly, the plaintiffs treated all sums advanced by them as 'intangible drilling and development costs' on their Federal income tax returns, not as payments for a leasehold interest, a security, or any other capital asset. Further, Hy Hammer and Morris Norian both declared that all money expended by them was pursuant to bills of Sanders-Fye for drilling (or in one instance, equipping,) costs." (*Hammer v. Sanders* (1956), 8

Ill. 2d 414, 421, 134 N.E.2d 509.)

As the court in *Hammer*, we find it significant that plaintiffs deducted the drilling costs on their taxes and not the leasehold interest.

 ▌ Furthermore, in *Burke v. Zipco Oil Co.* (1974), 19 Ill. App. 3d 909, 312 N.E.2d 399, this court applied *Hammer v. Sanders* (1956), 8 Ill. 2d 414, 134 N.E.2d 509, and held that cost of development in oil wells is not a security subject to the registration requirement under the Securities Law. Furthermore, the court in *Burke* explained the limits of the protective nature of the law:

> "We believe that the Securities Law serves a useful purpose and should be construed liberally in this light; however, it is intended to function as a shield for the innocent and not a sword for the investor who, because of the speculative nature of the venture or his own poor business judgment, fails to reap the expected return on his investment." *Burke v. Zipco Oil Co.* (1974), 19 Ill. App. 3d 909, 913, 312 N.E.2d 399.

We note that the Illinois Secretary of State has filed an *amicus curie* brief in this matter. In that brief, the Secretary of State urges us either to "distinguish" *Hammer*, or to "announce that the *Hammer* case will no longer be followed." The Secretary of State cites cases from other jurisdictions which he asserts are in conflict with *Hammer*, and appellate decisions subsequent to *Hammer* which purportedly either fail to follow *Hammer* or criticize it. (See *Witter v. Buchanan* (1985), 132 Ill. App. 3d 273, 476 N.E. 1123; *Illinois National Bank & Trust Co. v. Gulf States Energy Corp.* (1981), 102 Ill. App. 3d 1113, 429 N.E.2d 1301; *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446, 163 N.E.2d 1301.) As indicated previously in this decision, we find the facts of *Hammer* to be legally apposite to the facts in the case at bar, and thus can not be distinguished. Furthermore, it is not the function of an intermediate court of appeal to alter the law as pronounced by the State's supreme court. As the supreme court noted in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, in a similar situation:

> "[T]he nature of our court system requires that law established by this court's decision be followed when the question decided arises again before a court. If precedent is not judicially respected, the uniformity and stability of decision, which is essential to the proper administration of justice, will be destroyed. The appellate court panel usurped the function of this court, it is said, and created a conflict in appellate court decisions. *** [In *Beagley v. Andel* (1978), 58 Ill. App. 3d 588, 591], the appellate court properly observed: 'It is fundamental that appellate

courts are without authority to overrule the supreme court or to modify its decisions.' " 98 Ill. 2d 546, 551, 457 N.E.2d 1.

We are without authority to overrule or modify the decision of our supreme court in *Hammer*, and we decline the Secretary of State's offer to refuse to follow it. Accordingly, we find that the trial court was correct in deciding that plaintiffs are entitled to the return only of the cost of their leasehold interest and not their drilling cost.

For these reasons, the judgment appealed from is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.