JOHN H. WRIGHT *et al.*, Plaintiffs-Appellants, v. FRANK RICHARDS *et al.*, Defendants-Appellees.

Fifth District   No. 5—85—0553

Opinion filed June 26, 1986.

Pfaff, Garner & Terlizzi, of Salem, for appellants John H. Wright, Dan Mundell, and Charles Mundell.

Robert G. Burnside, of Burnside, Dees, Johnston & Choisser, of Vandalia, for appellees Frank Richards and Jeannine Richards.

JUSTICE HARRISON delivered the opinion of the court:

Seven plaintiffs brought this action against four defendants after learning that working interests in various oil and gas leases which they had purchased from defendants were unprofitable. Plaintiffs sought rescission of the sales and recovery of the amounts they had paid with interest as well as attorney fees under the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.1 *et seq.*) (the Securities Law). Plaintiffs also sought actual and punitive damages under a separate count of common law fraud. The circuit court of Marion County, after a bench trial, ordered rescission of the sales of the interests because defendants had failed to register the securities with the Secretary of State's office as required by section 5 of the Securities Law (Ill. Rev. Stat. 1985, ch. 121½, par. 137.5), and awarded plaintiffs amounts they paid for the securities plus interest and attorney fees. On the Securities Law counts, judgment was entered in favor of all seven plaintiffs against defendants Frank Richards, Red River Development, Inc., and Herman Wilson, but against all plaintiffs and in favor of defendant Jeannine Richards. On the fraud count, judgment was entered in favor of all defendants and against all plaintiffs.

Defendants have not appealed. However, three of the plaintiffs, Dan Mundell, Charles Mundell, and John Wright, have appealed claiming the court erred in (1) failing to grant them summary judgment, (2) granting judgment in favor of defendant Jeannine Richards in view of her failure to respond to a request for admission, (3) denying two of the plaintiffs recovery of completion costs, and (4) denying plaintiffs punitive damages. We affirm.

Defendant Red River Development, Inc., was the issuer of securities consisting of fractional undivided interests in oil and gas leases on property located in Kentucky. Defendant Frank Richards sold several of these securities to plaintiffs. The securities were not registered with the Secretary of State as required by section 5 of the Securities Law (Ill. Rev. Stat. 1985, ch. 121½, par. 137.5). Defendant Frank Richards testified he did not know the securities were not registered. He further stated he did not remember much about what he had told plaintiffs before selling them their interests. He testified that when he gave potential buyers production figures regarding oil wells, he gave them true and accurate information. He stated that the information he conveyed regarding production levels was based upon information given to him by his brother, defendant Russell Richards, who was involved with Red River and who had experience in the oil industry. Frank Richards testified that his wife Jeannine never had any connection with the sale of the interests in the leases. Jeannine Richards herself testified she never sold or solicited sales of the gas and oil leases.

The seven plaintiffs testified to the same general facts. They stated that Frank Richards had sold them working interests in gas and oil leases. He told them the wells would produce significant amounts of oil and gas. Plaintiffs stated they were not told the wells would be marginal producers, or that Frank Richards would be collecting substantial commissions on the sales. The seven testified that had they known these facts, they would not have purchased the interests. Three of the plaintiffs, Charles Mundell, Dan Mundell, and John Wright, testified that Jeannine Richards also gave them information leading them to believe the wells were productive, and that she influenced their decisions to purchase the interests. The wells included in the interests purchased by plaintiffs were either totally unproductive or only marginally productive.

The court found that because the securities were not registered, plaintiffs should recover the initial purchase prices paid for the interests as well as interest and attorney fees, but not the amounts paid for completing the wells. On the Securities Law counts, judgment was

entered for all plaintiffs against defendants Frank Richards, Red River, and Herman Wilson, but against all plaintiffs and in favor of defendant Jeannine Richards. On the fraud count, judgment was entered in favor of all defendants and against all plaintiffs.

■ Plaintiffs first argue the court erred in denying their motion for summary judgment. We cannot consider this allegation of error. "After an evidentiary hearing, a prior order denying summary judgment is not reviewable, any error in the denial being merged in the subsequent trial." *Clark v. Maddux* (1983), 118 Ill. App. 3d 546, 549-50, 454 N.E.2d 1179, 1182.

■ Plaintiffs next contend the court erred in entering judgment in favor of defendant Jeannine Richards on the Securities Law counts because she had admitted the facts necessary to hold her liable under the Act. Plaintiffs had filed a request to admit facts under Supreme Court Rule 216 (103 Ill. 2d R. 216), which in subparagraph (c), in pertinent part, states:

"Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant in whole or in part." (103 Ill. 2d R. 216(c).)

The request asked Jeannine Richards to admit she was a salesperson for Red River, and that she solicited sales and sold unregistered securities to plaintiffs. Jeannine Richards did not file a response within the 28-day time period found in Rule 216(c), but filed a response almost three months after the request. The court struck this response as being untimely. At trial, the court admitted evidence from both sides regarding whether Jeannine Richards was involved in soliciting sales or making sales of the securities for Red River. However, near the end of the trial, the court stated: "Any answer *** contrary to admissions and statement of facts will not be accepted by the Court as fact."

■ Plaintiffs argue that under Rule 216, once there was no timely response to the request for admissions, the facts in the request were admitted conclusively and Jeannine Richards could not present evidence on those matters. However, plaintiffs presented evidence of Jeannine Richards' involvement with the solicitation and sale of the

securities during their case in chief. A party waives his right to rely on the admission if he introduces evidence on the issues which would be controlled by the admission. (*People ex rel. Reynolds v. Aldridge* (1982), 107 Ill. App. 3d 679, 685, 437 N.E.2d 1268, 1272.) Since plaintiffs introduced evidence on the issue of Jeannine Richards' involvement with the solicitation and sale of securities, they waived their right to rely on the admission. The court here heard sufficient evidence to find Jeannine Richards was not involved. We cannot say its judgment in favor of Jeannine Richards on the Securities Law count was against the manifest weight of the evidence. See *Buehl v. Dayson* (1984), 127 Ill. App. 3d 958, 965, 469 N.E.2d 403, 409.

■ Two of the plaintiffs next contend the court erred in denying them recovery of completion costs, which were the costs of completing wells once they were found to be productive. John Wright and Dan Mundell claim they should have been able to recover amounts they paid as completion costs as part of the purchase prices paid for the working interests.

Section 13A of the Securities Law allows recovery of "the full amount paid, together with interest from the date of payment for the securities sold." (Ill. Rev. Stat. 1985, ch. 121½, par. 137.13A.) The question here is whether the completion costs were part of "the full amount paid" for the securities. Defendants cite *Hammer v. Sanders* (1956), 8 Ill. 2d 414, 134 N.E.2d 509, *cert. denied* (1956), 352 U.S. 878, 1 L. Ed. 2d 79, 77 S. Ct. 100, and *Burke v. Zipco Oil Co.* (1974), 19 Ill. App. 3d 909, 312 N.E.2d 399, for the proposition that payments for development costs of oil wells do not constitute securities. However, *Hammer* and *Burke* have been read very narrowly and have been limited to their unique facts. (See *Witter v. Buchanan* (1985), 132 Ill. App. 3d 273, 281-82, 476 N.E.2d 1123, 1130-31.) In *Hammer*, the contract called for separate payments for the working interest and drilling costs, and plaintiff admitted he made one payment and that was for drilling costs. In *Burke*, the limited issue was what constitutes the price of a security for purposes of filing a report under the limited offering provisions found in section 4H of the Securities Law (Ill. Rev. Stat. 1973, ch. 121½, par. 137.4H). In reading these two cases narrowly, the court in *Witter* criticized the approach to distinguishing working interests from payments for drilling costs as being what it called artificial. (*Witter v. Buchanan* (1985), 132 Ill. App. 3d 273, 284, 476 N.E.2d 1123, 1131.) Addressing its own case, the court in *Witter* looked to the agreement of the parties and the plaintiffs' testimony that they intended to purchase working interests when they made payments for drilling and completion costs to deter-

mine the plaintiffs had purchased securities because they indeed had purchased working interests. 132 Ill. App. 3d 273, 284, 476 N.E.2d 1123, 1131.

Likewise, we look to the intent of the parties, as evidenced primarily by their contracts, to determine if completion costs were part of the amount paid for the securities. The form of the contract signed by all plaintiffs read as follows:

"THIS CONTRACT AGREEMENT AND RECEIPT, MADE AND ENTERED INTO THIS _____ DAY OF _____, 19____ by and between the parties hereto, is to confirm out [*sic*] mutual agreement and understanding regarding your ownership of an interest in an Oil and Gas Lease on properties herein mentioned, WITNESSETH:

That we have received from you the sum of _____ Dollars for an undivided _____ working interest, subject to an overriding royalty interest of _____ of _____ in and to the Oil and Gas Lease in _____ County and State of _____.

Description: _____

_____

_____

That for this consideration, we agree to commence or cause to commence on this lease, the drilling of a well for Oil or Gas, and to diligently prosecute the drilling of same to a depth sufficient to test the _____ formation of Appx. _____ ft. unless Oil and/or Gas is discovered at a lesser depth.

That the amount paid by you $_____ will be your share of the leasehold cost, and the remaining amount will constitute your proportionate part of the drilling cost, permits, bonds, crop and property damages, surface casing, pits, cores and electric log, if and when all or any part are used, and the cost of plugging the well in the event of a dry hole.

That in the event of a producing well you are to pay only your pro-rata part of the casing, equipment, labor and other expenses necessary to complete the well and that upon receipt of periodic invoices from our office, you are to pay your pro-rata part of the operating expenses of the lease.

That any further well or wells to be drilled on this lease will be under the same terms as contained in this agreement.

That our company is to receive a monetary advance equal to your approximate pro-rata cost for well completions within _____ days of notification thereof.

That if, prior to the drilling of the first well on this lease, fur-

ther information is obtained by our company that would make it impractical or unfeasible to drill said well, the right is hereby reserved to refund all money and you agree that no cause of action shall thereby accrue.

That Red River Dev. Inc. is to act as operator of the above lease with full authority to carry out the standard practices of the industry on your behalf.

Upon completing of the well as a producer of oil and gas, an assignment will be issued in your name or a name of your choosing, for the amount declared in this contract, recorded in the County and State in which lease is located and delivered to you.

IN WITNESS WHEREOF the parties hereto have executed this agreement the day and year first above written."

The blanks were filled in with the appropriate facts and figures for each transaction. We also note that the amount stated in the fifth paragraph of each contract was always the same figure stated in the second paragraph.

Defendants seem to argue the agreement was in essence two contracts, one for the sale of the working interest and one for the payment of completion costs. We cannot agree.

This contract required a buyer to pay a certain amount at the time the contract was executed and required payment of completion costs if a well was found to be productive. The consideration for the working interest included payment for completion costs if those costs were incurred. While some buyers would not pay completion costs because some wells did not produce oil or gas, this fact does not lead to the conclusion that completion costs were not part of "the full amount paid" for the securities for those plaintiffs who eventually did pay completion costs. These contracts were simply ones in which the total price to be paid by the buyers was not known with certainty at the time the contracts were executed. The buyers here were purchasing working interests in oil and gas leases in the hope of realizing some profit on their investments. All parties knew the buyers could not receive any return unless the well actually produced oil or gas. Furthermore, they knew that such production was possible only after certain completion work had been done, and that the buyers were required to pay the costs of this completion. In addition, plaintiffs note that section 13A requires any income received by the plaintiffs to be deducted from the recovery. (Ill. Rev. Stat. 1985, ch. 121½, par. 137.13A.) Thus, if completion costs are not recoverable, a successful plaintiff might be required to refund income from proceeds from a completed

well while being denied recovery for the amounts paid to complete the well and make it income producing. We do not believe section 13A requires such an incongruous result.

For these reasons, we conclude "the full amount paid" for the securities here included the amount paid for completion costs. The trial court erred in denying recovery for these costs, and we reverse this portion of the judgment and remand for the court to award plaintiffs Dan Mundell and John Wright amounts paid as completion costs along with interest.

■ Plaintiffs' final contention is that the court erred in denying them punitive damages. Plaintiffs sought actual and punitive damages under their common law fraud count. We acknowledge that punitive damages can be awarded if fraud is established. (See *Shaw v. Miller* (1978), 64 Ill. App. 3d 743, 747, 381 N.E.2d 985, 989.) However, the court found in favor of all defendants and against all plaintiffs on the fraud count. We note that plaintiffs did not have to prove fraud to sustain their claims based upon the Securities Law, as these counts were based upon the allegation the securities were not registered.

■ We will not disturb the trial court's findings on the fraud count unless they are against the manifest weight of the evidence. (*Bailey v. Meador* (1980), 91 Ill. App. 3d 143, 145, 414 N.E.2d 279, 282.) The elements of a cause of action for fraud are: a false statement of material fact, knowledge or belief by defendant that the statement is false, or his awareness he is ignorant of its truth, intent by defendant to induce the other party to act, reliance by plaintiff on the misrepresentation, and injury caused by the reliance. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48, 390 N.E.2d 393, 403; *Ronan v. Rittmueller* (1982), 105 Ill. App. 3d 200, 205, 434 N.E.2d 38, 42.) In addition to misrepresentation, fraud may also consist of the omission or concealment of a material fact when such an act is done with the intent to deceive under circumstances creating an opportunity and duty to speak. (*Pearlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195, 380 N.E.2d 1040, 1044.) The intent to deceive may be proved by means of circumstantial evidence. (*Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, 337, 463 N.E.2d 1359, 1365.) However, fraud must be proved by clear and convincing evidence. 124 Ill. App. 3d 329, 336, 463 N.E.2d 1359, 1364.

■ There was no direct evidence that Frank Richards had any intent to deceive, but plaintiffs attempted to prove his intent circumstantially by showing the information they received from him regarding production levels was erroneous. Frank Richards testified that data he gave plaintiffs about production levels at the wells came from

information he had received from his brother, who had experience in the industry. He also had information from national news coverage of oil strikes in the area where these wells were located. He testified that any information he gave to plaintiffs was true and accurate. The court could believe Frank Richards did not know the information he gave plaintiffs was untrue and could also believe he was not culpably ignorant of its truth. (See *Ronan v. Rittmueller* (1982), 105 Ill. App. 3d 200, 208, 434 N.E.2d 38, 42 (where the court found there was no evidence that a salesman employed by the company for four months had knowledge the company could not perform under a contract).) A finding that Frank Richards had no intent to deceive was not against the manifest weight of the evidence. Nor was it against the manifest weight of the evidence to find Jeannine Richards had no such intent. Plaintiffs do not argue there was fraudulent conduct by Herman Wilson or Red River. Consequently, we affirm the court's judgment for all defendants on the fraud count.

Since we have found the court did not err in finding against plaintiffs on the fraud count, there was no error in denying plaintiffs punitive damages. Even if plaintiffs had proved fraud, the allowance of punitive damages is a matter within the court's discretion to determine and its decision will not be disturbed absent an abuse of discretion. *Shaw v. Miller* (1978), 64 Ill. App. 3d 743, 747, 381 N.E.2d 985, 989.

For the foregoing reasons, the following portions of the judgment of the circuit court of Marion County are affirmed: the finding for all plaintiffs and against defendants Frank Richards, Red River, and Herman Wilson on the Securities Law counts; the finding in favor of defendant Jeannine Richards and against all plaintiffs on the Securities Law counts; and the finding in favor of all defendants and against all plaintiffs on the fraud counts. The denial of recovery of completion costs to Dan Mundell and John Wright is reversed and the cause is remanded with directions for the court to award them completion costs with interest.

Affirmed in part, reversed and remanded with directions in part.

JONES and KARNS, JJ., concur.