(No. 63042.—

NORBERT A. DALEIDEN *et al.*, Appellants, v. WIGGINS OIL COMPANY *et al.*, Appellees.

*Opinion filed December 21, 1987.*

James S. Montana, Jr., and John A. Dienner III, of Pierce, Lydon, Griffin & Montana, of Chicago, for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Norman J. Barry, Jr., and Richard B. Foster III, of counsel), for appellees.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for *amicus curiae* Illinois Secretary of State.

JUSTICE MILLER delivered the opinion of the court:

Plaintiffs, Norbert A. Daleiden, David F. Thompson and Arthur J. Tremaine, filed suit in the circuit court of Cook County against defendants, Wiggins Oil Company, Mark L. Wiggins and Jerry M. Simpson, its president and vice-president, for the rescission of the sales and recovery of the amounts plaintiffs had paid for securities in defendant corporation. After a bench trial, the circuit court ordered rescission of the sales of the interests because defendants had failed to register the securities as required by section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1981, ch. 121½, par. 137.13), and awarded plaintiffs $6,250 in damages. The appellate court affirmed. (139 Ill. App. 3d 715.) We allowed plaintiffs' petition for leave to appeal (107 Ill. 2d R. 315), and granted permission to the Secretary of State to appear as *amicus curiae.*

The Securities Law of 1953 provides, in pertinent part:

> "All securities except those exempt *** under Section 4 hereof, *** shall be registered prior to sale in this State [with the office of the Secretary of State]." Ill. Rev. Stat. 1981, ch. 121½, par. 137.5.

> "A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and upon tender to the seller or into court of the securities sold or, where the securities were not received, of any contract made in respect of such sale, the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making such sale, and in case such issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making such sale, shall be jointly and severally liable to such purchaser for (1) the full amount paid, together with interest from the date of payment for the securities sold ***." Ill. Rev. Stat. 1981, ch. 121½, par. 137.13(A).

In 1981 plaintiffs, who are tax lawyers practicing in Illinois, formed an investment partnership. Each of the partners began looking for investment opportunities, and in August of that year Arthur Tremaine contacted James Musselman, a college friend who Tremaine had heard was involved in organizing oil and gas investments in Dallas, Texas. Tremaine advised Musselman that the partnership was actively seeking a suitable oil and gas investment opportunity. Musselman initially told Tremaine that he knew of no suitable investments; however, one week later Musselman informed Tremaine that Mark Wiggins, 75% owner of defendant corporation, was seeking investors in an oil and gas venture.

After a subsequent telephone conference between Tremaine, Daleiden and Musselman, the partnership decided to purchase a 10% undivided interest in two oil and gas wells located in Sterling County, Texas. On August 31, 1981, plaintiffs received a letter of agreement from defendant corporation, which plaintiffs signed on September 9, 1981. The letter provided that plaintiffs agreed "to pay 12.5% of all costs incurred in the drilling, testing, completing, and equipping or plugging for [their] 10% of said well." At no time, plaintiffs testified, were they informed by Musselman or Wiggins that the securities would not be registered with the office of the Secretary of State or were otherwise exempt from registration under the Act. (Ill. Rev. Stat. 1981, ch. 121½, pars. 137.4(G), (H).) Plaintiffs additionally testified that they considered the total amount invested to be in exchange for the 10% working interest and nothing else, and defendant Simpson testified that he considered that the "initial offering price" would normally include the original estimates to participate in the acquisition of the leasehold as well as the drilling of the wells. Plaintiffs subsequently mailed two checks in the amounts of $73,378 and $52,088, respectively, to defendants.

Approximately one year after plaintiffs invested in Wiggins Oil they encountered a great deal of difficulty in obtaining any information from the corporation or from Mark Wiggins. The partnership subsequently received notice that the well was dry. In October of 1982, becoming increasingly wary of the circumstances, Daleiden asked his attorney to investigate legal remedies which the partnership might pursue. On January 21, 1983, Daleiden and his attorney contacted the office of the Securities Division of the Illinois Secretary of State and were informed that the security in question had not been registered with that office nor had an exemption certificate been filed under section 4 of the Act (Ill. Rev. Stat.

1981, ch. 121½, pars. 137.4(G), (H)). On March 4, 1983, plaintiffs' attorney sent a letter to Wiggins and Simpson notifying them that the partnership was rescinding the transaction, intended to recover all sums expended in the venture, and was commencing the present action.

In awarding plaintiffs only $6,250 in damages, the circuit court distinguished sums spent in acquiring a leasehold from sums paid for drilling and completion costs. Relying on *Hammer v. Sanders* (1956), 8 Ill. 2d 414, the court explained that "while the Plaintiffs properly are seeking rescission pursuant to the then-applicable provisions of the [Securities] act, they are not entitled to recover the expenses incurred by the partnership in the drilling, completing, and/or plugging of the wells that were being drilled on the leasehold that they purchased. *** It is eminently clear *** that these were nothing more or less than expenses of operation, and as such, *** are not subject to recovery by the Plaintiffs." In affirming, the appellate court also found *Hammer* to be controlling, and held that the cost of developing oil wells is not a security within the purview of the Act. 139 Ill. App. 3d 715, 718.

Plaintiffs contend first that the circuit court erred in holding that the drilling, operating, and completion costs did not constitute securities pursuant to section 2.1 of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2–1). Plaintiffs submit that *Hammer* is factually inapplicable, and, in the alternative, urge that that decision is no longer viable and should be overruled. Arguing that *Hammer* "has been honored more in its avoidance than in its acceptance" (*Witter v. Buchanan* (1985), 132 Ill. App. 3d 273, 282), plaintiffs point to several decisions from our appellate court which have refused to accept the *Hammer* analysis (*Wright v. Richards* (1986), 144 Ill. App. 3d 450; *Witter v. Buchanan* (1985), 132 Ill. App. 3d 273; *Illinois National Bank & Trust Co. v. Gulf States Energy Corp.*

(1981), 102 Ill. App. 3d 1113; *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446). Plaintiffs further submit that the Federal courts and courts of other jurisdictions are in accord. (*Smith v. Manausa* (6th Cir. 1976), 535 F.2d 353; *Madigan, Inc. v. Goodman* (7th Cir. 1974), 498 F.2d 233; *Cross v. Pasley* (8th Cir. 1959), 270 F.2d 88; *Whittaker v. Wall* (8th Cir. 1955), 226 F.2d 868; *Repass v. Rees* (Dist. Ct. Colo. 1959), 174 F. Supp. 898; *Bradley v. Hullander* (S.C. 1978), 249 S.E.2d 486; *Kleiner v. Silver* (1976), 137 Ga. App. 560, 224 S.E.2d 508; *Covert v. Cross* (Mo. 1960), 331 S.W.2d 576.) Claiming that the Illinois Securities Law should be read *in pari materia* with the Federal securities laws (Young, *Exemptions from Registration Under the Illinois Securities Law of 1953*, 1961 U. Ill. L.F. 205), and that those laws and the decisions construing them "make clear the intention to include all payments as the price paid for the security," plaintiffs argue that this court should hold likewise.

Plaintiffs contend further that *Hammer* is not binding authority because the court failed to consider section 2.5 of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—5) in its decision. That section provides, in pertinent part:

> "Any security given with or as a bonus on account of, any purchase of securities or property shall be conclusively presumed to constitute a part of the subject of such purchase and shall be deemed to have been sold within the meaning of this Section."

Plaintiffs argue that where the term "security" includes "rights or royalties," and where the contract reveals that plaintiffs' payment of the 12% drilling costs essentially paid for the "rights and royalties" in the oil and gas produced, plaintiffs were, in reality, purchasing securities.

Plaintiffs alternatively contend that the instant transaction could be characterized as the sale of two separate securities, a leasehold interest and a security in the form

of an "investment contract" to develop that lease. Plaintiffs argue that it is well recognized that when the sale of a leasehold interest is coupled with a contract to develop the leasehold, a second security, in the form of an investment contract, is created. *Parvin v. Davis Oil Co.* (9th Cir. 1975), 524 F.2d 112; *Nor-Tex Agencies, Inc. v. Jones* (5th Cir. 1973), 482 F.2d 1093; *Witter v. Buchanan* (1985), 132 Ill. App. 3d 273; *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446.

Plaintiffs last contend that the circuit and appellate courts ignored defendant Simpson's concession during cross-examination that the "initial offering price" to plaintiffs included the leasehold costs as well as the costs of drilling. This admission, plaintiffs argue, is consistent with plaintiffs' contentions that they purchased securities consisting of two drilled wells, along with royalty rights in the oil and gas produced therefrom, for the price of $125,466.

*Amicus* agrees with plaintiffs that the decision in *Hammer* is an anomaly and that the costs of drilling oil wells should fall within the meaning of the term "securities" under the Act. Relying on *Norville v. Alton Bigtop Restaurant, Inc.* (1974), 22 Ill. App. 3d 273, for the proposition that an examination of the Federal Securities Act of 1933 (15 U.S.C. § 77a *et seq.* (1982)) and Federal Securities Exchange Act of 1934 (15 U.S.C. §78a *et seq.* (1982)) is helpful in ascertaining the intent of the General Assembly with regard to the terms used in the Act, *amicus* contends that the investment here does constitute a security because an agreement to pay money in connection with an oil-drilling venture for passive-investment purposes is a security within the meaning of the language used in both the Federal and Illinois securities laws. (15 U.S.C. §§77b(1), 78c(a)(10) (1982); Ill. Rev. Stat. 1983, ch. 121½, par. 137.2—1.) *Amicus* urges that the court must look to "economic realities" in order to determine

whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. (*Securities & Exchange Comm'n v. W. J. Howey Co.* (1946), 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100.) Consequently, *amicus* contends, since plaintiffs invested their money for a drilling venture to be undertaken by others, their agreement was an investment contract under the economic realities standard set forth in *Howey*.

*Hammer* construed the Illinois Securities Law of 1919 (Ill. Rev. Stat. 1953, ch. 121½, par. 97 *et seq.*) (1919 Law), which reads in relevant part:

"(1) The word 'securities' shall mean and include *** investment contracts, *** and any oil, gas or mining lease, royalty, or deed, and interest, units or shares in any such lease, royalty, or deed, ***." Ill. Rev. Stat. 1953, ch. 121½, par. 97(1).

In *Hammer* the plaintiffs entered into 51 separate transactions with the defendants; 45 of which were letter agreements and 6 of which were evidenced solely by invoices. The letter agreements stated that the plaintiffs were acquiring " 'an interest in leases on property as set forth below. We will assign to you an undivided 1/128th working interest, under oil and gas leases on a block of 200 acres, located in Gibson County, Indiana, for *** $242.19. We agree to commence *** drilling of a well for oil *** for the sum of $242.19, which is your share of the drilling cost of this well." (*Hammer*, 8 Ill. 2d at 416-17.) The plaintiffs sought to rescind the transactions and recover all sums expended under the Securities Law of 1919 after drilling resulted in seven dry holes. Ill. Rev. Stat. 1953, ch. 121½, par. 132.

In *Hammer*, the court distinguished between sums spent to acquire a working interest in oil and gas leaseholds from sums spent to pay for drilling costs, holding that the latter did not constitute consideration paid for a

"security" under the 1919 Law. The court stated that the letter agreements were not securities because "[t]he only sums advanced by the plaintiffs were for drilling costs— not in payment of shares in working interests (*Hammer*, 8 Ill. 2d at 422), and that the transfer of the leasehold interest was merely incidental. The court examined the parties' intent and found that both parties considered the sums spent by the plaintiff to consist entirely of drilling costs. The court noted as "significant" the fact that the plaintiffs had deducted those costs as such on their Federal income tax returns. 8 Ill. 2d at 421.

Three members in dissent, however, relying on the United State Supreme Court decisions of *Securities & Exchange Comm'n v. W. J. Howey Corp.* (1946), 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100, and *Securities & Exchange Comm'n v. C. M. Joiner Leasing Corp.* (1943), 320 U.S. 344, 88 L. Ed. 88, 64 S. Ct. 120, argued that the term "securities" was given a broad definition by the legislature and clearly encompassed sums spent on drilling costs. They criticized the majority's cursory examination of the documents themselves and reasoned that strict attention should instead be paid to the "obvious practical and economic relationship of the parties" (*Hammer*, 8 Ill. 2d at 429). The dissenters believed that the transactions fell under the definition of an "investment contract" under the *Joiner* and *Howey* decisions, noting that the plaintiffs would not have given the defendants money solely to pay for drilling costs without any right to the benefits of their investment.

The present action, unlike *Hammer*, involves the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2 *et seq.*) (1953 Law). The relevant portion of the 1953 Law provides that " '[s]ecurity' means any *** investment contract, *** fractional undivided interest in oil, gas, or other mineral lease, right, or royalty." (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—1.) The

1953 Law also provides for rescission of the sales made of any security in violation of the 1953 Law, including the failure to register under section 137.5 of the law and the failure to file for exemption under section 137.4(G) or (H). (Ill. Rev. Stat. 1981, ch. 121½, par. 137.13(A).) We note that the interpretive comments to this section (Ill. Ann. Stat., ch. 121½, par. 137.2(A), Interpretive Comments, at 580 (Smith-Hurd 1960)) state that the definition of securities was taken from the Federal Securities Act of 1933 (15 U.S.C. §77b(1)), and that the term "investment contract" in the 1953 Law is based upon the interpretation given it by the *Howey* and *Joiner* opinions. This court has often examined the commentary as a guide in ascertaining the legislative intent. (See *Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 212; *People v. Manning* (1979), 76 Ill. 2d 235, 240.) The language of the 1953 Law was also expanded by the legislature to expressly include, under the definition of a security, a "fractional undivided" interest in oil or gas leases. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.2—1.) We further note that one of the principal drafters of the 1953 Law stated that:

> "the definition of the term 'securities' in the 1953 Law was taken from the Federal Securities Act of 1933, and therefore decisions under that Act should have considerable weight with the judiciary. These decisions include such broad interpretations of the term 'securities' as are found in the cases of *SEC v. C. M. Joiner Leasing Corp.* [(1943), 320 U.S. 344, 88 L. Ed. 88, 64 S. Ct. 120] and *SEC v. W. J. Howey Co.* [(1946), 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100], which hold that the phrase 'investment contract' includes the sale of an interest in any type of profit-seeking venture whereby the investor transfers his capital to the promoters, and looks to the promoters for the success of his investment." Young, *Exemptions from Registration Under the Illinois Securities Law of 1953*, 1961 U. Ill. L.F. 205, 206.

We believe a brief examination of those opinions would be useful in our analysis of the 1953 Law.

The United States Supreme Court dealt with the issue of oil and gas leaseholds in *Securities & Exchange Comm'n v. C. M. Joiner Leasing Corp.* (1943), 320 U.S. 344, 88 L. Ed. 88, 64 S. Ct. 120. The Court focused on the expectations of the parties in holding that the sale of leaseholds along with a promise to drill for oil constituted a security under the Federal Securities Act of 1933. (15 U.S.C. §77b(1).) The Court's holding was premised on its finding that the investors expected profits from the enterprise. The Court noted that the plaintiff's economic interest in earning a profit was what motivated them to purchase the instruments. See *Joiner*, 320 U.S. at 349, 88 L. Ed. at 92, 64 S. Ct. at 122-23.

In *Securities & Exchange Comm'n v. W. J. Howey* (1946), 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100, the Court elaborated on the analysis to apply in determining whether interests which are not by statutory definition "securities" come within the purview of the Federal act as investment contracts. The Court again focused on the economic realities of a given transaction, and developed a three-prong test, holding that,

> "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." (*Howey*, 328 U.S. at 298-99, 90 L. Ed. at 1249, 66 S. Ct. at 1103.)

The Court emphasized that the test was purposely flexible in order to "meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299, 90 L. Ed. at 1250, 66 S. Ct. at 1103.

In looking at the economic relationship between the parties, and their intent in entering into the present

agreement, an examination of the record reveals that the present transaction clearly involved a contract in which the plaintiffs invested money in the defendants' enterprise, anticipating profits to come solely from defendants' efforts. The defendants alone were responsible for all phases of production from which plaintiffs expected to earn profits. There is no indication that the parties considered plaintiffs' payments to cover production costs only. As stated earlier, defendant Simpson testified that he considered the initial offering price to include the cost of the acquisition of both the leasehold and the costs of drilling, and each of the plaintiffs testified that they considered the total amount invested to be in exchange for their working interest alone. While the plaintiffs acknowledged that they deducted the drilling costs on their partnership tax returns, treating them separately from the $6,250 labeled on the invoices as the cost of leasehold interest, they ultimately invested in the defendants' company in order to realize a profit. Mr. Daleiden testified that the partnership was primarily interested in making investments which would provide, above all, a good economic return. Moreover, Mr. Wiggins testified that in order to realize any profit or receive their 10% interest in the investment, the plaintiffs were required to pay the drilling costs. If the plaintiffs had not paid the drilling costs, therefore, the investment would have been worthless. We find, therefore, that the parties' intent was that plaintiffs were purchasing both a portion of production costs as well as interests in the oil and gas wells.

Although we decline to agree with plaintiffs that *Hammer* should be overruled, we nevertheless conclude that that decision is distinguishable from the case at bar. The broadened language in the 1953 Law defining security, along with the interpretive comments and the *Howey* and *Joiner* decisions, lead us to conclude that it is

necessary to strictly limit the *Hammer* decision to its interpretation of the 1919 Law. We believe that the reasoning underlying the *Howey* and *Joiner* decisions is compatible with the language and intent of the 1953 Law. We note that subsequent decisions of the appellate court construing *Hammer* have distinguished *Hammer*, and by applying the analysis used in *Joiner* and *Howey* have held that the transfer of interests in an oil venture, including sums expended for the leasehold as well as for drilling and completion costs, do constitute securities. (See *Wright v. Richards* (1986), 144 Ill. App. 3d 450; *Witter v. Buchanan* (1985), 132 Ill. App. 3d 273; *Illinois National Bank & Trust Co. v. Gulf States Energy Corp.* (1981), 102 Ill. App. 3d 1113; *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446.) The plaintiffs' intent in investing in the defendant's common enterprise was clearly to invest with the hopes of securing an economic benefit, and to do so, they were required to pay both drilling costs and leasehold costs. The plaintiffs' right to rescission under the 1953 Law, therefore, extends to all sums paid for the security, including leasehold and drilling costs. Because we conclude that *Hammer* is inapplicable to the present transaction and that the transaction constitutes a security, we find it unnecessary to address the remainder of the parties' contention.

For the reasons stated, the plaintiffs are entitled to the full amount paid for the security at issue. Accordingly, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*