953 F.2d 1392
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Curtis v. TITUS; Soloman M. Aordkian; Richard E. Drescher;
David W. Rogers; Frederick D. Hyatt; Louis S. Avitabile;
L.V.R. Adm. Honsinger; Charles H. Russell; William M.
Goss, Jr.; Robert G. Smith; John D. Dibble; Charles E.
Ray, D.D.S.; John F. Burbank; Fieldwood Associates; Harry
H. Whittingham; Petroflo Associates; Emilio Sinopoli;
John Sinopoli; J.C. Hotchkiss; Phyllis Nininger; Gusher
Associates and Aordkian Pension Plan, Plaintiffs-Appellees,
v.
GEO-ENGINEERING, a New Mexico corporation; Ruth Law,
substituted for James Law, Deceased and James
Woods, Defendants-Appellants.
 No. 91-2079.
 United States Court of Appeals, Tenth Circuit.
 Jan. 23, 1992.
 
 1
 Before LOGAN and BARRETT, Circuit Judges, and KELLY,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 PATRICK F. KELLY, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Plaintiffs commenced this action by filing a twelve-count complaint alleging claims for federal and state securities violations and fraud, racketeering, breach of contract, common law fraud, conversion, negligent misrepresentation, and unfair trade practices, all arising out of their purchase of thirty-two fractional, undivided working interests in an ultimately unproductive oil and gas lease from Defendants. Sometime after obtaining summary judgment on their claim for rescission under N.M.Stat.Ann. § 58-13-42[1] based on Defendants' violation of state registration requirements, Plaintiffs asked, and the district court agreed, to dismiss all their remaining claims without prejudice to reinstatement should that summary judgment be reversed upon review. Damages, interest, and attorney's fees were determined, the district court entered judgment for Plaintiffs accordingly, and Defendants appealed.
 
 
 6
 Defendants raise several issues on appeal, the first being a challenge to the subject matter jurisdiction of the district court over the state law claim upon which judgment was entered. To summarize this two-pronged challenge, Defendants argue that (1) jurisdiction cannot be based on 28 U.S.C. § 1332, because the Complaint identifies only the "residence" of the parties and, consequently, fails to allege the requisite diversity of citizenship, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir.1972) ("allegations of mere 'residence' may not be equated with 'citizenship' for purposes of establishing diversity"), and (2) pendent jurisdiction[2] may not be invoked, because due to fatal statute of limitations problems, plaintiffs' federal question claims lack the substance necessary to anchor their state law claims, see Sullivan v. Scoular Grain Co., 930 F.2d 798, 803 (10th Cir.1991) (to enable federal court to hear state law claims under principle of pendent jurisdiction, " 'federal claim must have substance sufficient to confer subject matter jurisdiction on the court' ") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).
 
 
 7
 With respect to the first point, Plaintiffs maintain that they properly alleged diversity jurisdiction in the Complaint, see Appellee's Supplemental Appendix (Supp.App.) at 35 ("[t]his is a civil action between citizens of different states....") at 36 ("[t]his court also has jurisdiction of this action by virtue of diversity of citizenship ... under 28 U.S.C. § 1332"), and emphasize that Defendants admitted the substance of these allegations in their Response to Request for Admissions, see Supp.App. at 171, 177 (Defendants "admit" that "[t]his is a civil action between citizens of different states...."). However, under the law of this circuit, a conclusory allegation of diverse citizenship, without supporting factual allegations actually identifying what the pertinent citizenships are, is insufficient to establish jurisdiction. See, e.g., Penteco Corp. Ltd. Partnership 1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521-22 (10th Cir.1991); see also Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir.1971) (diversity must be determined from allegations in complaint "without regard to mere conclusory allegations of jurisdiction"). Furthermore, Defendants' failure to deny Plaintiffs' conclusory assertion of diversity is of no moment, as "lack of jurisdiction [cannot] be waived or jurisdiction conferred by 'consent, inaction or stipulation.' " Penteco Corp., 929 F.2d at 1521 (quoting Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir.1974)).
 
 
 8
 We need not remand for a definitive factual determination regarding diversity, however, because Plaintiffs stand on much firmer ground with their alternative invocation of pendent jurisdiction, see Supp.App. at 36. As already noted, the Complaint includes claims for federal securities violations, which are governed by the most analogous state statute of limitation. See Bath v. Bushkin, Gaims, Gaines & Jonas, 913 F.2d 817, 818-19 (10th Cir.1990). Where the violations involve fraud, the appropriate limitations period is provided by the state fraud statute. See, e.g., Hackbart v. Holmes, 675 F.2d 1114, 1120 (10th Cir.1982); Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 (10th Cir.1980). Thus, the four-year limitations period contained in N.M.Stat.Ann. § 37-1-4 controls at least some of the federal claims asserted herein, and even under Defendants' view of the accrual date of this action (in May 1984), Plaintiffs commenced suit within this time period.
 
 
 9
 Since the only challenge to the substance of Plaintiffs' federal claims has no merit, the decision to exercise pendent jurisdiction was clearly a matter within the district court's discretion.[3] See Sullivan, 930 F.2d at 803. Defendants suggest no basis for finding an abuse of that discretion, nor does the record indicate one. Accordingly, we turn to the merits of the case and examine first the grant of summary judgment for Plaintiffs on their claim for rescission under § 58-13-42.
 
 
 10
 We review summary judgment determinations de novo. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c) and examine the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied." Id. These federal procedural principles control despite the nonfederal substance of the underlying claim. Cf. Mid-America Pipeline Co. v. Lario Enters., Inc., 942 F.2d 1519, 1524 (10th Cir.1991) (although federal courts must apply state law to merits of diversity case, "as a matter of independent federal procedure we utilize the normal federal standards of appellate review to examine the district court's decision process"). The basic, essentially undisputed, historical facts pertinent to the determination under review are recounted in the parties' briefs and need not be repeated in detail here. We shall only refer to particular matters as required in the course of our analysis, which primarily concerns the contested meaning or effect of the applicable state law. Our review of the district court's construction of the latter is also de novo. See Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1221 (1991).
 
 
 11
 Under N.M.Stat.Ann. § 58-13-4(A), all securities offered or sold in New Mexico must be registered unless the transaction or the securities themselves are exempted. Violation of this requirement results in a sale voidable by the purchaser pursuant to § 58-13-42. Defendants argue that the district court erred in granting summary judgment under these statutes, because genuine factual disputes exist concerning whether the parties' transaction (1) constituted or involved an "offer or [sale of] any security in this state," § 58-13-4 (emphasis added), (2) was exempt under § 58-13-30(J) as a limited offering of investment securities not involving payment of a commission or solicitation fee, and (3) was exempt under § 58-13-30(O) as a restricted sale of limited partnership interests.
 
 
 12
 As to the first point, Defendants maintain that many of the events culminating in the parties' transaction took place in Connecticut, where the Plaintiff investors resided and where they signed their contract with Defendants. However, Defendants have not cited a single authority in support of their contention that such out-of-state activities render the NMSA inapplicable to the subject transaction. On the contrary, the NMSA is not displaced simply because "[some] of the stages leading up to the sale of the securities took place in [another state]." State v. Shafer, 698 P.2d 902, 906 (N.M.App.) (NMSA applicable to sale of securities based on out-of-state sellers' in-state demonstration of underlying product, even though additional solicitation efforts, along with receipt of purchase funds and issuance of stock, undertaken in sellers' home state), cert. denied, 698 P.2d 886 (1985). Furthermore, as Plaintiffs point out, a contract is deemed consummated under New Mexico law where the last act necessary to its formulation is performed. Merriman v. Harter, 280 P.2d 1045, 1047 (N.M.1955); see Riblet Tramway Co. v. Monte Verde Corp., 453 F.2d 313, 317 (10th Cir.1972). Here, where the contract stipulated that it would not be binding until execution by the New Mexican Defendants, see Appellees' Supp.App. (Supp.App.) at 76, the contract should be deemed consummated in New Mexico under the cited principle. See, e.g., Alexander Film Co. v. Pierce, 121 P.2d 940, 940-41 (N.M.1942) (contract held consummated at home (Colorado) offices of offeror under similar stipulation).
 
 
 13
 Defendants' exemption claims, upon which they bear the burden of proof, see Shafer, 698 P.2d at 908 (quoting § 58-13-44), are similarly deficient. Their reliance upon § 58-13-30(J) is precluded by their admission that ten percent of the working interests involved in the transaction were conveyed to Plaintiff Robert Smith as a commission for his efforts in arranging sales. See Supp.App. at 5-9, 13 (deposition of Defendant Woods), and 18 (deposition of Defendant Law). The express terms of the parties' contract, which states that it is "understood and agreed by and between the parties hereto that said parties are not partners and nothing herein contained or by assignments or otherwise, creates a partnership[,]" plainly undercut Defendants' attempt to invoke § 58-13-30(O). We note that Defendants do not refer us to anything in the record or cite us to any legal authority to avoid the adverse conclusions to which the above considerations directly lead us. See generally Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990) ("[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority ... forfeits the point").
 
 
 14
 Next, Defendants argue that, whatever the merits of the underlying decision to grant rescission, Plaintiffs should be denied that remedy for their subsequent failure to comply with § 58-13-42, which contemplates the rescinding purchaser's "tender to the seller ... of the securities sold or of the contract made...." We agree with Plaintiffs that where, as here, the offending seller has made the specified tender impossible by structuring the transaction in such a way that the purchasers retain no certificate or contract memorializing their interests, see Supp.App. at 75 (purchaser must agree "that he will not be given any instrument to be recorded of record reflecting his interest in production[,]" and should he wish to assign his interest, "evidence of assignment will be forwarded [by Defendants] to the assignee upon request") at 76 (contract not effective until returned to Defendants for execution), this provision simply has no application. See In re Bell & Beckwith, 89 B.R. 632, 639-40 (Bankr.N.D.Ohio 1988) (tender requirement inapplicable where circumstances, such as nonexistence, valuelessness, or unavailability of documents, make tender impossible or inconsequential), and numerous cases cited therein.
 
 
 15
 Defendants also challenge the amounts awarded as restitution to Plaintiffs, in particular the funds that Plaintiffs expended for well completion costs,[4] which Defendants emphasize were not part of the original purchase price of the working interests sold to Plaintiffs. Defendants rely exclusively on Daleiden v. Wiggins Oil Co., 487 N.E.2d 1121 (Ill.App.Ct.1985), to support their position that rescission damages in the present context must exclude any amounts paid by purchasers to develop or exploit the oil and gas leases in which they have invested. We note, however, that the Illinois Supreme Court reversed the appellate court decision in Daleiden on this very point, holding that development costs such as those awarded to Plaintiffs' here are, under present-day law, properly considered part of the offending seller's liability to the rescinding purchaser. See Daleiden v. Wiggins Oil Co., 517 N.E.2d 1059, 1064-65 (Ill.1987). Decisions from other jurisdictions are consonant with the approach followed in Daleidon. See Repass v. Rees, 174 F.Supp. 898, 904-06 (D.Colo.1959) (plaintiff entitled to recovery of full amount paid in connection with oil and gas venture, even though plaintiff knew most or all of funds were for drilling costs); cf. Rose v. Dobras, 624 P.2d 887, 893 (Ariz.Ct.App.1981) (fact that funds paid by plaintiff were reinvested in underlying venture instead of going directly to seller of securities does not preclude plaintiff's recovery of full amount paid); Marshall v. Harris, 555 P.2d 756, 757, 765 (Ore.1976) (where purchaser of interest in race horses agreed to pay expenses involved in training and racing horses, such expenses were recoverable upon rescission of transaction for seller's failure to comply with securities law). While we have found no similarly relevant case law from New Mexico, the Daleidon rule is consistent with the relatively open-ended remedial language of the NMSA, which does not expressly limit the seller's liability to a refund of the purchase price, but requires repayment of "the full amount paid by [the rescinding] purchaser," § 58-13-42 (emphasis added).
 
 
 16
 We need not delimit the precise reach of the rescission remedy provided in the NMSA. We hold only that under the circumstances presented, where the sellers retained the authority to proceed with well completion efforts while imposing upon the purchasers the obligation to pay the expenses thus incurred, see Supp.App. at 61, such expenditures may be recovered in an action to rescind the underlying contract for securities violations.
 
 
 17
 The last matter presented for our review concerns the district court's award of attorney's fees to Plaintiffs under § 58-13-42 (providing for award of "attorney's fees ... in any action ... under this section"). "A district court's award of attorney's fees generally is subject to an abuse of discretion standard of review on appeal." Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986). Underlying questions of law, however, are reviewed de novo. Id. Again, we apply these federal procedural standards, even though the fee award under review is authorized and governed by state law. Cf. Mid-America Pipeline, 942 F.2d at 1524.
 
 
 18
 Defendants argue that the fee award impermissibly compensates Plaintiffs' counsel for time and effort expended in pursuit of claims upon which Plaintiffs clearly did not prevail, namely the eleven federal and state claims voluntarily dismissed by Plaintiffs on the second day of trial, over a year after Plaintiffs obtained summary judgment on their rescission claim. The New Mexico courts have indicated that it is improper for the trial court to consider time and effort spent on unsuccessful claims when awarding fees to a party for prevailing on another claim for which fees are available. See, e.g., Archuleta v. Safeway Stores, Inc., 727 P.2d 77, 81 (N.M.Ct.App.1986); Morgan v. Public Serv. Co., 652 P.2d 1226, 1229, 1231 (N.M.Ct.App.1982). Plaintiffs have not disputed, either on appeal, see Brief for Appellee at 29, or below, see Supp.App. at 145, 148 (Plaintiffs' Memorandum in Support of Motion for Allowance of Attorney's Fees), that they sought and obtained fees for services rendered in connection with all of their various claims, without any limitation or attribution of hours to particular claims. See Supp.App. at 140-44 (Affidavit Regarding Attorney's Fees and Disbursement Expenses); Judgment for Rescission, Attorney's Fees and Costs, filed March 4, 1991, at 2. Instead, Plaintiffs maintain that asserted overlap of the work done on all of their claims warrants a blanket award of fees based entirely on the degree of success achieved with respect to rescission. While not foreclosing establishment of such a fact-bound exception to the general rule illustrated by Archuleta and Morgan, we note that the district court made no pertinent, supportive findings in this regard and the record does not afford us any occasion to supply them as a matter of law. Consequently, we conclude that the issue of fees must be remanded for further proceedings.
 
 
 19
 Accordingly, the judgment of the United States District Court for the District of New Mexico is AFFIRMED in all respects except for the award of attorney's fees to Plaintiffs, which is hereby VACATED. The cause is REMANDED for further proceedings consistent herewith.
 
 
 
 *
 Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 All citations herein to the New Mexico Securities Act (NMSA), N.M.Stat.Ann. §§ 58-13-1 through -46 (Repl.Pamp.1984), refer to its codification at the time of the events involved in this case, prior to its repeal and reenactment, as amended, by the New Mexico Securities Act of 1986, 1986 N.M.Laws Chapter No. 7 (codified at N.M.Stat.Ann. §§ 58-13B-1 through -57 (Repl.Vol.1991)). See id. at § 58 ("[p]rior law governs all suits, actions, prosecutions or proceedings which are pending or may be initiated on the basis of facts or circumstances occurring before the effective date of this act [July 1, 1986]....")
 
 
 [2]
 The recently enacted statute governing what is now termed "supplemental jurisdiction," 28 U.S.C. § 1367, applies only to civil actions commenced on or after December 1, 1990, and therefore does not affect our analysis of this case, commenced in 1986, under prior prevailing law. See Miller v. Glanz, 948 F.2d 1562, 1565 n. 4 (10th Cir.1991)
 
 
 [3]
 It is beyond dispute that all of Plaintiffs' claims "derive from a common nucleus of operative fact," Sullivan, 930 F.2d at 803 (quoting Gibbs, 383 U.S. at 725), which is the only other condition on the district court's power to invoke pendent jurisdiction. Id
 
 
 [4]
 Defendants also complain in quite summary fashion that the district court's determination of damages in reliance upon the unrebutted testimony of Plaintiffs' expert, Kimberly Storm C.P.A., see Supp.App. at 131-36, was somehow improper because her calculations were derived indirectly from composite data (itself unchallenged by Defendants) rather than drawn directly from separate documentation provided to the court by each individual investor. This facially unpersuasive objection, which lacks any citation to supporting authority, is meritless. See generally Pelfresne, 917 F.2d at 1023