**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LORILLARD TOBACCO
COMPANY, a Delaware corporation,

    Plaintiff-Appellant,

v.

ISAAC G. ENGIDA d/b/a
I AND G LIQUORS,

    Defendant-Appellee.

Nos. 08-1037, 08-1334

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 06-cv-00225-LTB-OES)**

---

Teresa L. Ashmore (Bobbee J. Musgrave with her on the brief), of Holme Roberts
& Owen, LLP, Denver, Colorado, for Plaintiff-Appellant.

Stephen C. Peters (Todd E. Mair with him on the brief), of Peters Law Firm,
L.L.C., Denver, Colorado, for Defendant-Appellee.

---

Before **GORSUCH**, **McKAY**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Plaintiff-Appellant Lorillard Tobacco Co. ("Lorillard") appeals from the district court's order granting attorney's fees to Defendant-Appellee Isaac G. Engida under the Lanham Act's fee provision, 15 U.S.C. § 1117(a), and alternatively under section 13-17-102 of the Colorado Revised Statutes. We exercise jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1291, and **REVERSE** the award of attorney's fees to Mr. Engida.

**BACKGROUND**

Lorillard sued Mr. Engida, who was doing business as I & G Liquors, for allegedly selling counterfeit Newport® cigarettes, a Lorillard cigarette brand. Lorillard sought injunctive relief and damages for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and also for alleged violations of Colorado's common law of unfair competition, Colorado's deceptive trade practices statute, Colo. Rev. Stat. § 6-1-105, and Colorado's statute governing service mark infringement, Colo. Rev. Stat. § 7-70-111(1)(a). The district court granted Lorillard's request for a temporary restraining order ("TRO") and for an ex parte seizure order on February 10, 2006. When the U.S. Marshals initially attempted to execute the seizure order, they found the doors to Mr. Engida's store locked. It was during regular business hours, the store's "open sign" was lighted, and its lights and a television were on. The officers waited for some time, but eventually left. The next day, a subsequent search of Mr. Engida's store uncovered no Newport® cigarettes—counterfeit or otherwise. However, the

-2-

search did locate business records indicating that Mr. Engida had purchased

Newport® cigarettes from an unknown source outside of ordinary distribution

channels.

On February 24, 2006, the district court dissolved the TRO and denied

Lorillard's motion for a preliminary injunction at a hearing without issuing a

written opinion. At that same hearing, the district court offered to try to find an

attorney to represent Mr. Engida,[1] and on March 10, 2006, the district court

------

[1]    In making this offer to Mr. Engida, the district court judge explained:

> I'll tell you what, you know, if I dismiss this case and if this big tobacco company wants to appeal it to the higher court, I would be reversed, and we would be right back here. But what I can do is two things. First of all, I can order the plaintiff to show cause why the case should not be dismissed as frivolous, and I'm going to order that in ten days. If they can show me that the case should not be dismissed, and they might be able to do that, then what I am going to do . . . is we have a cadre of lawyers who in an appropriate case where somebody can't afford to hire their own attorney will accept the representation, we call it pro bono, that means they're going to be your lawyer without you having to pay anything. I can't promise you that, but I'll try to find somebody.

Aplt. App. at 678. The district court then went on to "warn" Lorillard about
continuing its case by saying:

> Now what the plaintiff ought to do is consider whether you really want to continue this case. I'm not sure—in the Lanham Act is there an attorney fee provision for the prevailing party? Pro bono attorney takes the case and prevails, and there is a statutory provision for an attorney fee, the pro bono attorney may be entitled to it. I think plaintiff's

(continued...)

appointed two attorneys to represent Mr. Engida on a pro bono basis.

Immediately following the February 24 hearing, the district court sua sponte

issued an order directing Lorillard to show cause why its counterfeiting case

should not be dismissed. Lorillard responded to the show-cause order on March

6, 2006, and on July 13, 2006, the district court vacated that order. On January 8,

2007, we affirmed the district court's denial of the preliminary injunction, *see*

*Lorillard Tobacco Co. v. Engida*, 213 F. App'x 654 (10th Cir. 2007), and a little

more than two weeks later we denied Lorillard's petition for rehearing, *see*

*Lorillard Tobacco Co. v. Engida*, No. 06-1115, slip op. at 1 (Order Den. Pet. for

Reh'g, dated Jan. 25, 2007).

Then, on April 25, 2007, Lorillard filed a petition for certiorari, which the

Supreme Court denied. *See Lorillard Tobacco Co. v. Engida*, 551 U.S. 1146

(2007). During these appellate proceedings, the underlying case was stayed.

Specifically, after the Tenth Circuit denied relief, Lorillard filed *unopposed* two

motions to reschedule status conferences, which the district court granted.

Following the Supreme Court's denial of the petition for certiorari, neither party

sought to get the litigation back on track.

---

[1](...continued)
> counsel better consider seriously continuing this case. Perhaps
> you ought to find a better small fish.

*Id.* at 678–79.

-4-

After the case returned to the district court (but before Mr. Engida filed an answer), Lorillard filed a notice to dismiss the case without prejudice and without a court order pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)[2] on November 1, 2007. In response to the notice, Mr. Engida moved for an award of attorney's fees. The district court awarded Mr. Engida attorney's fees pursuant to 15 U.S.C. § 1117(a) of the Lanham Act and section 13-17-102 of the Colorado Revised Statutes, but limited the award to those fees incurred by Mr. Engida in defending against Lorillard's "unnecessary and vexatious" appeals from the court's denial of its request for a preliminary injunction. Aplt. App. at 407. Lorillard filed its first notice of appeal from this order. The parties then stipulated that the fees and costs authorized by the district court's January 2008 order were $126,000, and the district court memorialized that agreement in an order entered on August 20, 2008. Lorillard filed a second notice of appeal from that order. The cases were consolidated for procedural purposes on appeal.

---

[2] On December 1, 2007, an amendment to Federal Rule of Civil Procedure 41 took effect. That amendment altered slightly the language and numbering of the provision relevant to this case, but did not affect its substance. Although the 2007 amendment has no direct impact on our resolution of this case, the Supreme Court provided "[t]hat the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2007, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, *all proceedings then pending*." Order of Apr. 30, 2007, 2007 US Order 30 (C.O. 30) (emphasis added). Therefore, we will be guided by the current version of the rule with the understanding that our analysis will not be affected by doing so. We therefore will cite to the current version, Rule 41(a)(1)(A)(i), while noting that the old citation to Rule 41(a)(1)(i) appears in some of the cases cited herein.

## DISCUSSION

### A.  *Standard of Review*

The parties disagree regarding what standard of review we should apply to the district court's award of attorney's fees under the Lanham Act.  Lorillard argues that de novo review applies, while Mr. Engida argues that abuse-of-discretion review applies.  We have previously made clear that "[w]e review a district court's decision on whether to award attorney fees [under the Lanham Act] for abuse of discretion, but we review de novo the district court's application of the legal principles underlying that decision."  *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000) (stating that in reviewing fee award under the Lanham Act "'[u]nderlying factual findings will only be upset when clearly erroneous.  However, a district court's statutory interpretation or legal analysis which provides the basis for the fee award is reviewable de novo.'" (quoting *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1224 (10th Cir. 1998)).

"Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Fed. Deposit Ins. Corp. v. Rocket Oil Co.*, 865 F.2d 1158, 1160 n.1 (10th Cir. 1989).  Elaborating on that standard, we have stated: "A

-6-

district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (citation omitted).

We apply this same standard of review in determining the propriety of the district court's award of attorney's fees under section 13-17-102 of the Colorado Revised Statutes. Mr. Engida does not dispute that the applicable standard of review is abuse of discretion. But he relies on Colorado cases in advocating for this position. *See* Aplee. Br. at 16 (citing *Consumer Crusade, Inc. v. Clarion Mortgage Capital, Inc.*, 197 P.3d 285, 289 (Colo. Ct. App. 2008); *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo. 2004)). In reviewing state law awards of attorney's fees, however, it has been our consistent practice to look to our own precedent on this purely procedural issue—*viz.,* the applicable standard of review.[3] *See, e.g., Hofer v. UNUM Life Ins. Co. of Am.*, 441 F.3d 872, 884 (10th Cir. 2006); *Scott's Liquid Gold, Inc. v. Lexington Ins. Co.*, 293 F.3d 1180, 1183

---

[3]     In the attorney's-fees context, we expressly addressed this point in a non-precedential decision. *See Titus v. Geo-Eng'g*, 953 F.2d 1392 (Table), 1992 WL 11319, at *4 (10th Cir. Jan. 23, 1992) ("A district court's award of attorney's fees generally is subject to an abuse of discretion standard of review on appeal. . . . [W]e apply these federal procedural standards, even though the fee award under review is authorized and governed by state law." (citations omitted) (internal quotation marks omitted)).

(10th Cir. 2002); *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1520 (10th Cir. 1994); *cf. Mid-Am. Pipeline Co. v. Lario Enters., Inc.* 942 F.2d 1519, 1524 (10th Cir. 1991) ("Although *Erie* dictates we apply Kansas law to the merits of this case, as a matter of independent federal procedure we utilize the normal federal standards of appellate review to examine the district court's decision process."). Mr. Engida has offered us no reason why we should deviate from this settled practice. Therefore, even though this matter would be very unlikely to materially affect our analysis of the district court's fee award under section 13-17-102,[4] we decline Mr. Engida's tacit invitation to rely on Colorado law and,

---

[4] In all material respects, Colorado's abuse-of-discretion standard—as applied to attorney's-fees awards—resembles the federal standard. In *Huffman v. Westmoreland Coal Co.*, the Colorado Court of Appeals concisely summarized the standard as follows:

> The determination whether attorney fees should be awarded under section 13-17-102 is within the discretion of the trial court and will not be disturbed on appeal *if it is supported by the evidence.* A trial court abuses its discretion in this context when the findings and conclusions of the trial court are *so manifestly against the weight of the evidence as to compel a contrary result.*

205 P.3d 501, 511 (Colo. Ct. App. 2009) (emphasis added) (citation omitted) (internal quotation marks omitted); *see also Consumer Crusade, Inc.*, 197 P.3d at 289 ("A trial court has broad discretion in ruling on a request for attorney fees under section 13-17-102, and its ruling will not be overturned on appeal absent an abuse of discretion."). Thus, akin to our federal standard, under Colorado law, an appellate court would likely conclude that a trial court has abused its discretion in awarding attorney's fees when it has committed a clear error of judgment or rendered an award without any rational basis in the record for its decision.

instead, look to our own precedent for guidance concerning the appropriate standard of review and the parameters of that standard, as described above.[5]

**B.** *Attorney's Fee Award Under the Lanham Act*

The portion of the Lanham Act at issue in this appeal reads as follows: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Therefore, in order to uphold the district court's award under the Lanham Act, we must conclude that the district court properly determined that Mr. Engida was a prevailing party and properly found this to be an exceptional case. Because we conclude that Mr. Engida was not a prevailing party, the district court's fee award under the Lanham Act must be

---

[5]   Lorillard initially argues that the district court lacked authority to award fees in this case because the court of appeals needed to do so in the first instance. This case, however, falls comfortably within the rule we established in *Crumpacker v. Kansas, Department of Human Resources*, 474 F.3d 747, 756 (10th Cir. 2007), that a district court may award appellate fees incurred on interlocutory appeal in the first instance when that court concludes that the party asking for fees has subsequently become entitled to them. As this case involved just such an appeal, the district court had authority to award appellate fees to Mr. Engida. Lorillard also seeks to rely on *Crumpacker* to argue that, when the district court awards fees for litigation at the appellate level, our review should be de novo, rather than for an abuse of discretion. *See id.* However, as we will explain, we must reverse the district court even under the more generous abuse-of-discretion standard that we have just outlined. Thus, we have no need to determine definitively under facts like these—where the district court has awarded attorney's fees based on Lorillard's appellate litigation—whether the proper standard of review is de novo, rather than abuse of discretion. We assume without deciding that only the more generous abuse-of-discretion standard applies.

reversed.[6]

The district court's conclusion that Mr. Engida was a prevailing party is a legal question that this court reviews de novo. *Cf. Al-Maleki v. Holder*, 558 F.3d 1200, 1204 (10th Cir. 2009) (holding prevailing-party status is a legal question reviewed de novo under the Equal Access to Justice Act); *cf. also Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005) (in the context of fee awards under § 1988, holding that "every Circuit to address the issue has determined that the characterization of prevailing-party status for awards under fee-shifting statutes . . . is a legal question subject to *de novo* review").

Lorillard argues that Mr. Engida was not a prevailing party because Lorillard voluntarily dismissed the case without prejudice and without a court order under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Under the facts of this case, we agree. "Under Rule 41(a)(1)(A)(i)[,] a plaintiff may dismiss an action voluntarily before the defendant files an answer or a motion for summary judgment." *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009). Voluntary dismissal of an action ordinarily does not create a prevailing party because in order to create a prevailing party there must be a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home,*

---

[6] Having concluded that Mr. Engida was not a prevailing party, we need not reach the question of whether this was an exceptional case under the Lanham Act.

*Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also*

*RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007)

(holding voluntary dismissal under Rule 41(a)(1)(A)(i) does not bestow prevailing

party status because the action may be re-filed and it is not "judicially

sanctioned").  Under the plain language of Rule 41(a)(1)(A)(i), a plaintiff may

dismiss the action without a court order; no judicial sanction is required.  *See* Fed.

R. Civ. P. 41(a)(1)(A)(i).

In determining that Mr. Engida was a prevailing party, the district court

pointed to Mr. Engida's defeat of the preliminary injunction before the district

court, the Tenth Circuit Court of Appeals, and the United States Supreme Court,

and also to what the district court perceived to be the preclusive effect of this

defeat in future proceedings.  However, the district court's denial of injunctive

relief was based on Lorillard's failure to carry the burden of proof on the

likelihood of irreparable harm and the balance of harms, not on Lorillard's failure

to establish that it was likely to prevail on the merits.  *See* Aplt. App. at 399 ("At

th[e preliminary injunction] hearing, I reviewed the evidence obtained pursuant to

the February 14, 2006, search and held that Plaintiff had failed to meet its burden

of showing it would suffer irreparable harm if an injunction did not issue."); *see*

*also Engida*, 213 F. App'x at 656–57 (discussing Lorillard's failure to show it

would suffer irreparable harm in the absence of an injunction and its failure to

show that the threatened injury to it outweighed any harm that would be caused to

Mr. Engida as a result of the injunction).

We have previously made clear that "[a] preliminary injunction that does not provide a plaintiff with relief on the merits of [his] claim cannot serve as the basis for prevailing party status." *Biodiversity Conservation Alliance v. Stem*, 519 F.3d 1226, 1232 (10th Cir. 2008). If a plaintiff who is *granted* a non-merits-based injunction cannot be a prevailing party, *see id.*, it logically and ineluctably follows that a defendant who *defeats* an injunction cannot be a prevailing party if the denial similarly is based on non-merits grounds.

Mr. Engida argues, however, that he in fact did materially alter the legal relationship between the parties and achieved success because the district court rejected some portion of the plaintiff's claim, and consequently, he was allowed to proceed as before the suit was filed. However, this argument does not address Lorillard's contention that the denial of the preliminary injunction was not a merits-based decision. Because the district court granted him no merits-based relief, Mr. Engida cannot demonstrate that he was a prevailing party.

Mr. Engida cites *Maine School Administrative District No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9 (1st Cir. 2003), in support of his argument that a defendant who defeats the imposition of a preliminary injunction can be a prevailing party. In *Maine School Administrative District*, a school district filed suit against the parents of a disabled child and sought a TRO and preliminary injunction prohibiting the parents from using the "stay put" provisions of the Individuals

with Disabilities Education Act, 20 U.S.C. § 1415(j), to keep their child in a mainstream school while an administrative review of his placement was being conducted. *Id.* at 12–13. When the district court denied the TRO, the school district voluntarily dismissed its complaint and the parents asserted that they were entitled to attorney's fees and costs. *Id.* at 13. The district court denied the parents' requested fees on the basis that they were not prevailing parties. *Id.* On appeal, the First Circuit reversed the district court and concluded that the parents' attorney's-fees request should be granted because they were in fact prevailing parties who had defeated the school district's suit on the merits. *Id.* at 16–17.

Mr. Engida argues that his claim for prevailing-party status is "as solid as that of the [parents] in *Maine School Administrative District*." Aplee. Br. at 32. In making this argument, Mr. Engida overlooks the many material distinctions between his case and *Maine School Administrative District*. For example, in that case, the "quest for injunctive relief was the sole object" of the plaintiff's suit, 321 F.3d at 16 (noting that injunctive relief was "the raison d'être" of the school district's suit); and the parties' legal relationship was materially altered by the denial of the preliminary injunction because the injunction was denied on the ground that the plaintiff had failed to show that it would prevail on the merits, *see id.* at 17 ("Because the district court denied injunctive relief on the basis that the School District had not adduced sufficient proof . . . , it is readily evident that the appellants successfully defended the [suit] *on the merits*."); *see id.* ("By

-13-

defending, the appellants not only deprived the School District of the benefit that it sought in bringing suit but also blocked it from implementing a course of action inimical to [the disabled student's] interests. The appellants' victory was, therefore, material.").

In contrast, the district court's denial of Lorillard's request for a preliminary injunction was not merits-based.  The district court itself explained in its order granting Mr. Engida's fee request that it denied the injunction on the basis that Lorillard had failed to show irreparable harm.  In addition, Lorillard's request for injunctive relief was not the "sole object" of its suit; for example, it also sought damages.  Although we need not definitively opine on the subject here, Mr. Engida may well be correct that a defendant who defeats the imposition of a preliminary injunction is not categorically excluded as a matter of law from prevailing-party status.  However, we conclude in this case that Mr. Engida is *not* a prevailing party because he cannot show that the district court granted him any merits-based relief.  Specifically, the district court's order did not afford Mr. Engida relief from the merits of the claims against him and did not provide a judicially-sanctioned alteration in the parties' relationship.  Consequently, Mr. Engida was not a prevailing party with respect to the district court's order.  The appellate rulings of our court and the Supreme Court that, respectively, affirmed and left in place this non-merits-based denial also did not make Mr. Engida a prevailing party because these rulings did not judicially alter the parties' legal

-14-

relationship or provide merits-based relief.

Finally, the district court determined that Mr. Engida was the prevailing party due to what it perceived to be the preclusive effect of the denial of the preliminary injunction in any subsequent litigation. However, "[t]he injunction standard of probable success on the merits is not equivalent to actual success on the merits." *N. Arapahoe Tribe v. Hodel*, 808 F.2d 741, 753 (10th Cir. 1987). Consequently, a party's claim to have succeeded at the preliminary injunction stage does not necessarily transform a party into a prevailing party. "It is of course literally true that every preliminary injunction effects some judicially sanctioned change in the parties' legal relationship. If that were all [the Supreme Court's decision in] *Buckhannon* requires, then every recipient of a preliminary injunction becomes a prevailing party eligible for an attorneys' fee award." *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006). Following the district court's collateral-estoppel rationale, every denial of a preliminary injunction would similarly make each defendant a prevailing party. That rationale ignores the fact "that a preliminary injunction that grants only temporary relief pendente lite is not, without more, a judicially sanctioned *material* alteration of the parties' legal relationship." *Id*. at 1086. As previously discussed, to be a prevailing party on the basis of a preliminary injunction requires "relief on the merits," *Biodiversity*, 519 F.3d at 1232, and because this is not the case with Mr. Engida, he is not a prevailing party and therefore is not entitled to fees under the

-15-

Lanham Act.

**C.** *Attorney's Fee Award Under Section 13-17-102 of the Colorado Revised Statutes*

Alternatively, the district court granted attorney's fees to Mr. Engida on the basis of section 13-17-102 of the Colorado Revised Statutes, which reads in part:

> (2) . . . in any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.
>
> . . . .
>
> (4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct . . . . As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

Colo. Rev. Stat. § 13-17-102(2), (4).[7]

While section 13-17-102 clearly may apply to claims brought in the District of Colorado, *see Harrison v. Luse*, 760 F. Supp. 1394, 1400 (D. Colo.), *aff'd*, 951 F.2d 1259 (10th Cir. 1991), Lorillard argues that because it voluntarily dismissed

_____

[7]     The breadth of section 13-17-102 is noteworthy.  Unlike the Lanham Act's attorney's-fees provision, 15 U.S.C. § 1117(a), the Colorado provision does not require a party to prevail and applies regardless of whether the case is exceptional.

-16-

the case, the district court lacked jurisdiction to award the attorney's fees under section 13-17-102. Contrary to Lorillard's argument, the district court need not have subject matter jurisdiction to award attorney's fees pursuant to section 13-17-102. *See Consumer Crusade, Inc.*, 197 P.3d at 288–89 (discussing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–38 (1992)); *cf. Sequa Corp. v. Cooper*, 245 F.3d 1036, 1037 (8th Cir. 2001) ("[A] voluntary dismissal without prejudice under Rule 41(a)(1)(i) does not deprive a District Court of its authority to award costs.").

A similar issue has been considered by the Colorado Court of Appeals regarding section 13-17-102. In *Consumer Crusade, Inc.*, that court held that the trial court did not lack jurisdiction to enter an award of attorney's fees under section 13-17-102. In so holding, the court relied on the U.S. Supreme Court's holding in *Willy v. Coastal Corp. See id.* at 288–89. In *Willy*, the Supreme Court held that the federal district court had jurisdiction to impose Rule 11 sanctions even though it was later found to lack subject matter jurisdiction because the complaint removed to federal court raised no claims arising under federal law. *Willy*, 503 U.S. at 137-38 ("A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it. But such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction.").

Based on its reading of *Willy*, the Colorado Court of Appeals analogized Rule 11 sanctions to attorney's fees awarded under section 13-17-102. The court explained that "[b]ecause section 13-17-102 sanctions are analogous to Rule 11 sanctions, we conclude that, like Rule 11 sanctions, section 13-17-102 sanctions may be imposed despite a court's lack of subject matter jurisdiction to adjudicate the underlying merits of the action." *Id.* at 289. We adopt that reasoning here in addressing as a matter of federal law this jurisdictional question. Although Lorillard had voluntarily dismissed its case, the district court still had jurisdiction to "consider collateral issues" including "an award of counsel fees." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (holding that "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal"). "It is well established that a federal court may consider collateral issues after an action is no longer pending," including an award of attorney's fees. *Id.*

Having established that the district court had jurisdiction to issue the award, we nevertheless conclude that the district court abused its discretion in awarding attorney's fees to Mr. Engida under Colorado law. More specifically, we conclude that there is no rational basis in the record for the district court's fee award and, consequently, the court committed a clear error of judgment in granting Mr. Engida's motion for fees. *See Davis*, 302 F.3d at 1111; *Fed. Deposit Ins. Corp.*, 865 F.2d at 1160 n.1. Under section 13-17-102, the district court may

"award . . . reasonable attorney fees against any attorney or party who has brought . . . a civil action . . . that the court determines lacked substantial justification." Colo. Rev. Stat. § 13-17-102(2). "An award of appellate attorney fees pursuant to section 13-17-102(4) is appropriate only if the appeal *itself* lacks substantial justification." *Padilla v. Ghuman*, 183 P.3d 653, 665 (Colo. Ct. App. 2007) (emphasis added) (citing Colo. Rev. Stat. § 13-17-102(4)); *accord Front Range Home Enhancements, Inc. v. Stowell*, 172 P.3d 973, 976–77 (Colo. Ct. App. 2007).

An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." Colo. Rev. Stat. § 13-17-102(4). "An appeal lacks substantial justification and is substantially frivolous under § 13-17-102(4) when the appellant's briefs fail to set forth . . . a coherent assertion of error, supported by legal authority." *Giguere v. SJS Family Enters., Ltd.*, 155 P.3d 462, 474 (Colo. Ct. App. 2006); *see also Ritchey v. McCreath (In re Estate of McCreath)*, ___ P.3d ___, 2009 WL 4981894, at *10–11 (Colo. Ct. App. 2009). "A vexatious claim or defense is one brought or maintained in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive, or *stubbornly litigious*, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Zivian v. Brooke-Hitching,*, 28 P.3d 970, 974 (Colo. Ct. App. 2001) (emphasis added); *accord Stowell*, 172 P.3d at 976.

Further, a claim lacks substantial justification if it lacks supporting

-19-

evidence or the party pursing the claim cannot make a rational argument in its support based on the evidence or governing law. *See Consumer Crusade, Inc.*, 197 P.3d at 291 (holding that if "a party persists in pursuing a claim, despite knowing that it lacks admissible evidence to support that claim, the claim may properly be characterized as substantially groundless, and the party's conduct, as substantially vexatious" (citation omitted)); *Zivian*, 28 P.3d at 974 (rejecting a request for appellate attorney's fees under section 13-17-102(4), noting that "[a] claim is frivolous if the proponent has no rational argument to support it based on the evidence or the law" and that "[a] claim is groundless if there is no credible evidence to support the allegations in the complaint").

In support of its fee award, the district court explained that "even if attorney fees were not appropriate under the Lanham Act, [Mr. Engida] would still be entitled to attorney fees under Colorado law." Aplt. App. at 407. The district court stressed that it viewed Lorillard's repeated appeals of the denial of the preliminary injunction as "unnecessary and vexatious." *Id.* Thus, Lorillard's decision to appeal the denial of the preliminary injunction to the Tenth Circuit and then to seek certiorari relief from the United States Supreme Court, in the district court's view, justified the fee award. *Id.* In that vein, Mr. Engida argues vigorously on appeal that "Lorillard's repeated appeals served no legitimate purpose, were maintained to annoy and harass Mr. Engida, and were the epitome of 'stubbornly litigious.'" Aplee. Br. at 49. Based upon our review of the record,

-20-

however, we conclude that nothing supports the district court's adverse findings concerning Lorillard's conduct.

A brief review of salient aspects of this litigation's procedural time-line lends support to this point because it reveals no unwarranted delay. On February 9, 2006, Lorillard filed its initial complaint in this case along with a motion for a TRO. The district court granted Lorillard's motion the next day, February 10. In a hearing on February 24, 2006, the district court dissolved the TRO and denied Lorillard's request for a preliminary injunction. Less than thirty days later, on March 23, 2006, Lorillard timely filed its notice of appeal as to the district court's denial of a preliminary injunction. On June 22, 2006, Lorillard filed a motion to stay the proceedings in the district court or for a scheduling conference, and on June 26, 2006, filed a motion for default judgment because Mr. Engida still had not filed an answer to Lorillard's initial complaint. On July 13, 2006, the district court granted the motion to stay the proceedings, denied the motion for default, and vacated its show-cause order.

On January 8, 2007, this court issued its order and judgment affirming the district court's ruling, concluding that the court did not abuse its discretion in denying Lorillard's request for a preliminary injunction. We denied Lorillard's petition for rehearing on January 25 and issued the mandate in this matter on February 2, 2007. On February 6, 2007, Mr. Engida filed a motion with the district court for a hearing/conference regarding a scheduling conference, and on

March 20, 2007, Lorillard filed its first *unopposed* motion to continue the status/scheduling conference. The next day, the district court granted Lorillard's unopposed motion and rescheduled the hearing to May 4, 2007. On April 17, 2007, Lorillard filed its second *unopposed* motion to stay the proceedings, and the next day, the district court granted this motion to continue, thereby vacating the May 4 status hearing and staying the proceedings.

Less than ten days later, on April 25, 2007, Lorillard filed its petition for certiorari with the U.S. Supreme Court. The Supreme Court denied that petition two months later, on June 25, 2007. Neither party moved the district court to lift the stay or to enter a scheduling order. Then, approximately four months later, on November 1, 2007, Lorillard filed its notice of dismissal without prejudice. At this point, there still was no scheduling order in place—which would have imposed deadlines and moved the litigation along—and Mr. Engida had yet to file an answer.

Notwithstanding Mr. Engida's "stubbornly litigious" characterization of Lorillard's conduct, this time-line of events does not support his argument that Lorillard engaged in abusive litigation tactics; indeed, it speaks to the contrary. Most notably, Lorillard's two motions to reschedule status conferences after the Tenth Circuit denied relief on appeal were unopposed, and Mr. Engida never sought to get the litigation back on track after the denial of the petition for certiorari, as there is no indication in the record that anything further happened in

-22-

the district court during the intervening period until Lorillard's notice of dismissal. Consequently, Lorillard could hardly be said to have engaged in dilatory litigation conduct to the prejudice of Mr. Engida when the litigation was stayed, there were no court-imposed deadlines requiring Lorillard to do anything, and Mr. Engida never voiced any objections to this state of affairs in the form of a motion to vacate the stay. Nor did he take the opportunity to file an answer. In other words, nothing in this sequence of events indicates Lorillard engaged in conduct aimed at causing "unwarranted delay." *Zivian*, 28 P.3d at 974. Lorillard merely sought to stay the underlying proceedings during the pendency of its appellate matters and Mr. Engida did not oppose Lorillard's efforts. This course of conduct invariably reduced the expenditure of resources by Mr. Engida (who was not even obliged to file an answer) and by the district court itself. And, once the appellate proceedings were concluded, given the absence of a scheduling order in the district court imposing deadlines or any objection to the pace of proceedings by Mr. Engida, Lorillard reasonably cannot be said to have dragged its feet to the prejudice of Mr. Engida.[8]

---

[8] In deciding that an award of attorney's fees under section 13-17-102 would be appropriate, the district court also reasoned that Lorillard could not find shelter under the safe-harbor provision of that statute, which reads: "No attorney fees shall be assessed if, after filing suit, a voluntary dismissal is filed as to any claim or action within a reasonable time after the attorney or party filing the dismissal knew, or reasonably should have known, that he would not prevail on said claim or action." Colo. Rev. Stat. § 13-17-102(5). According to the district

(continued...)

-23-

In addition to the procedural sequence of events, it is patent that the substance of the appeals are germane to the question of whether the appeals were interposed for an improper purpose, like harassment or delay. Indeed, the district court's conclusion that Lorillard's appeals were "unnecessary," Aplt. App. at 407,

---

[8](...continued)
court, Lorillard could not use the safe-harbor provision because it had not filed its notice of dismissal within a reasonable time of knowing that it would not prevail. The district court explained that Lorillard "should have been aware it would not prevail on the underlying action when notified by the Tenth Circuit on January 25, 2007, that it would not reconsider [Lorillard's] appeal." Aplt. App. at 407. However, Lorillard did not file its notice of dismissal for another nine months, and during that time, Lorillard, according to the district court, filed "another unnecessary and vexatious appeal to the United States Supreme Court." *Id.* The district court concluded that even taking the date of the Supreme Court's denial of certiorari as when Lorillard should have known it would not prevail, Lorillard did not file its notice of dismissal for an additional four months, and the court found this additional delay to be unreasonable.

Even if we were to conclude that the district court did not abuse its discretion in determining that an award of attorney's fees against Lorillard would be appropriate under section 13-17-102(4)—absent coverage of the safe-harbor provision—the foregoing sequence of events stands in strong opposition to the district court's conclusion that Lorillard cannot seek shelter under the safe-harbor provision because it did not dismiss its complaint within a reasonable time. In particular, following the Tenth Circuit's denial of Lorillard's appeal, Lorillard filed two *unopposed* motions to reschedule status conferences, and following the Supreme Court's denial of the petition for certiorari, neither party filed anything until Lorillard filed its voluntary notice of dismissal without prejudice. Thus, the action was still stayed in the district court and there was no scheduling order in place that would have obliged the parties to take action before Lorillard's notice was filed. However, we need not definitively opine on this subject because we conclude that the district court *did* abuse its discretion in finding (apart from the safe-harbor provision) that an award of attorney's fees was appropriate. In other words, Lorillard should not have had any occasion to seek the protection of the safe-harbor provision because an award of attorney's fees against it was not justified.

-24-

underscores this point. Yet, the substance of Lorillard's appellate matters could not reasonably be viewed as "frivolous" or "groundless," as defined by the Colorado courts, as they advanced arguments that were well-reasoned and supported by relevant case law. *See Ehrlich v. Anita Flowers (In re Estate of Hope)*, 223 P.3d 119, 123 (Colo. Ct. App. 2007) ("Although claimant was unsuccessful on appeal, we do not consider her arguments to be so lacking in factual or legal justification as to warrant an award of fees under . . . § 13-17-102."); *Giguere*, 155 P.3d at 474 ("Plaintiffs' unanimity argument is a matter of first impression in Colorado. They relied on authority from other jurisdictions supporting their position. Thus, we cannot say their appeal of this issue is frivolous."); *Zivian*, 28 P.3d at 975 ("[W]hile plaintiff's evidence did not persuade us that the trial court erred in its determination of the issues, he made a rational argument on appeal. Therefore, neither sanctions nor attorney fees are justified."); *cf. Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. Ct. App. 2006) ("We hold that an appeal 'lacks substantial justification' and is 'substantially frivolous' under § 13-17-102(4) when the appellant's briefs fail to set forth . . . a coherent assertion of error, supported by legal authority.").

Lorillard's positions on appeal were more than adequately supported by legal and factual authority. For example, it relied on decisions from eight separate circuits rejecting the district court's bases for denying preliminary injunctive relief and holding that the damage inflicted on a trademark owner from

-25-

infringement is by its very nature irreparable. *See* Aplt. App. at 154–62; 222–25; 259–63. And Lorillard's appeals were not "disrespectful of truth and accuracy." *Zivian*, 28 P.3d at 974. In sum, Lorillard's appellate proceedings could not reasonably have been viewed under Colorado law as frivolous or groundless. Thus, the substance of the filings would not lend support to the district court's conclusion that they were unnecessary and vexatious (e.g., asserted for illegitimate, non-merits-based reasons, like harassment).[9]

Accordingly, the district court abused its discretion in awarding attorney's fees to Mr. Engida under Colorado law. As the Colorado Court of Appeals explained in *Castillo*, "[w]e are 'mindful of the possibility that awarding damages and costs could have an undue chilling effect on the behavior of later litigants.'" 148 P.3d at 292 (quoting *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991). Colorado courts rightly hesitate to grant fee awards where an appeal "is not so futile, irrational, or unjustified as to warrant a clear finding that [the] appeal was frivolous." *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 934

---

[9] Lorillard vigorously argues that "the district court mistakenly believed that Lorillard could be *punished* for the mere act of filing an appeal without regard to whether or not the appeal was well taken." Aplt. Opening Br. at 42 (emphasis added). We are disinclined to attribute such a punitive motive to the able and experienced district court judge presiding over this case. It is beyond peradventure that punishing a litigant solely for availing itself of the avenues of appellate relief provided by law would be manifestly improper. Nonetheless, we do conclude that the district court's determination that Lorillard's appeals were unnecessary and vexatious finds no support in the record and renders its award of attorney's fees an abuse of discretion.

(Colo. 1993). The appeals at issue do not meet that standard and do not justify an award of fees.

## CONCLUSION

For the forgoing reasons, we **REVERSE** the district court's award of attorney's fees to Mr. Engida under both the Lanham Act and Colorado law.[10]

---

[10] Mr. Engida has filed a separate motion asking us to award him the reasonable attorney's fees expended defending the fee award in this appeal, in the event that we affirm the district court's award of attorney's fees under either the Lanham Act or Colorado law. *See* Aplee. Mot. Attorneys' Fees Incurred On Appeal (filed Aug. 6, 2009). Because we reverse the district court's award of attorney's fees on both grounds, we **DENY** Mr. Engida's motion as moot.